OPINION OF THE COURT
Sam Eisenberg, J.
The defendant is charged with failure to provide sufficient heat to premises 144 Vista Place, Mount Vernon, New York, on the following days: December 21, 1981; December 22, 1981; December 23, 1981; January 6, 1982 and January 7,1982. The defendant pleaded not guilty and the matter was tried by the court without a jury. The proceedings against the defendant were commenced by an “instant summons” following a prior notice of heat violation served on November 8, 1981, within 120 days of the complaint herein. The prior notice was dismissed after compliance.
The defendant has challenged these proceedings and these challenges can only be understood within the context of the pertinent provisions of the Code of the City of Mount Vernon.
*278 Section 149-62 A of the code dealing with “Housing Standards” sets forth the general requirements relating to the heating of premises.
Section 149-43 A of the code provides in substance, that when the building commissioner determines that there has been a violation of the housing standards or that there are reasonable grounds to believe that there has been a violation, except as provided in section 149-46 of the code, notice of such violation must be given to the responsible party with a reasonable opportunity to cure the violation.
Section 149-46 of the code provides in substance that when the commissioner finds a violation “which in his opinion, requires immediate action to abate a direct hazard or immediate danger to the health, safety or welfare of the occupants of a building or of the public” he may, instead of the notice required under section 149-43 A of the code, issue an order directing action to abate the hazard or danger within no less than eight hours.
Under section 149-43 C of the code, wherever there is a heating violation, which had not been the subject of a heating violation within 120 days, an eight-hour order pursuant to section 149-46 of the code may issue.
On the other hand, section 149-43 B provides that if there has been a prior notice of a heating violation within 120 days, then no further notices are required as a precedent to prosecution and instead an “instant summons” may issue to prosecute the subsequent violation.
Section 149-54 of the code permits hearings with respect to alleged violations, granting automatic stays of compliance pending the results of the hearing. But, no such hearings are required in cases of direct hazards or immediate dangers as contemplated by section 149-46 of the code.
The pattern of the provisions of the code with respect to housing standards, including heat violations may be summarized as follows.
Where there is a charge of a violation which does not constitute a direct hazard or immediate danger, prosecution must be preceded by a notice of the violation and a reasonable opportunity to comply. Additionally, the person charged is entitled to a hearing with respect to the viola *279 tion. However, where there is a violation which represents a direct hazard or immediate danger, an order may issue demanding compliance within eight hours. There is no provision for hearings in such cases. The eight-hour notice requirement applies equally to heat violations except where there has been a similar heat violation notice within 120 days. If there has been a similar heat violation notice within 120 days, no additional prior notice is required for prosecution of the instant violation, but instead prosecution may be undertaken forthwith by means of an “instant summons”. There is no provision for hearings in connection with heat violations.
Now, the challenge of the defendant to the summons and the charges may be summarized as follows: (1) that an “instant summons” for a heat violation, without prior notice to comply, may be served only where it is preceded by a prior proper notice of a heat violation within 120 days, and since, in this case, the prior notice of November 8,1981 was dismissed, it became a nullity and could not be the predicate for the “instant summons” herein; (2) that the prior notice of November 8, 1981 ordered compliance within eight hours, such eight-hour notice being permissible only in cases of direct hazards or immediate danger to health, safety or welfare, and since there has been no showing that the prior heat violation constituted such hazard or danger, it could not be the predicate for the “instant summons” herein; (3) that the Code of the City of Mount Vernon authorizes hearings upon request, with respect to violations of its housing standards, except in cases of hazard or danger, and since there has been no showing of hazard or danger, the defendant should not have been prosecuted without a prior notice and opportuntiy for a hearing.
The arguments of the defendant have one basic flaw. They fail to recognize that the very nature of a heat violation is such that it would justify a finding that the lack of sufficient heat is a danger and hazard to the occupants of the affected building and to the community. That danger and hazard is acknowledged expressly by the provisions of the code. Section 149-46 of the code permits an eight-hour notice for any violation which is a danger or *280 hazard to the community. Consistent with that provision, section 149-43 C of the code permits an eight-hour order to comply where there is a heat violation. And this court sees no deprivation of due process or abrogation of the rights of a defendant by section 149-43 B of the code which permits instant prosecution for a heat violation which follows within 120 days of a prior notice of a heat violation. The hazard and danger to health, comfort and safety which follow from the lack of sufficient heat justify prompt and forthright action to enforce compliance. That need for immediate action precludes an administrative hearing before enforcement.
Nor, does the fact that the prior notice of violation has been dismissed preclude its use as the predicate to the service of an instant summons under section 149-43 B of the code. The language of that section is clear and unambiguous. It provides simply and expressly that no notice to comply is required as a condition precedent to prosecution for a heat violation where it follows, within 120 days, a prior eight-hour order to cure a similar violation. The statute does not limit the prior notice to one which is pending or which has led to a conviction.
The defendant objects also to the admission into evidence of the results of readings of the temperature within the premises by use of a thermometer which had been calibrated on January 30,1981 by the Department of Laboratories and Research of the County of Westchester, as being too remote in time to be reliable evidence.
That same issue was previously considered by this court in People v Lane, (Docket No. 3124-81 A) and in a decision dated February 8,1982 it was disposed of as follows: “That contention is rejected by the Court. There is a principle of law, that proof of the existence of a condition at a given time raises a presumption that it continued for as long as is usual with things of that nature. Richardson on Evidence (Tenth Edition) Sec. 74. Thermometers are items of daily and common use. They are used equally by professionals, such as doctors and scientists and laymen. While it is an instrument which is scientific, in nature, it is a simple and uncomplicated device. Any person, of ordinary intelligence, may testify as to the readings from a thermometer. *281 Thermometers are relied upon by professional and laymen alike for a variety of purposes, without prior and recent calibration and testing for accuracy. Of these facts concerning the nature use, and reliability of thermometers the Court may and does take judicial notice. Richardson on Evidence (Tenth Edition) Sections 38 and 40. The undisputed evidence of the temperature readings by the use of thermometer ‘L’, may therefore be considered by the Court.”
The court now concludes that in this case, as well, the readings from the thermometer may, together with all of the other evidence be considered in the resolution of this case.
The defendant urges that he had a constitutional right to prior notice of the alleged violation and an opportunity to cease and desist. The court is not aware of any such constitutional right. An owner is not entitled to such notice with an opportunity to abate unless he had no notice of the condition and could not have known of it despite his control and operation of the premises. (Matter of 300 West 154th St. Realty Co. v Department of Bldgs, of City of N. Y., 26 NY2d 538.) We have no such situation here.
The court now addresses itself to the facts with respect to the violations on the respective days and makes the following determinations.
On December 21,1981 at 10:55 a.m., the outside temperature was 55 degrees and the thermometer used by the code enforcement officer showed temperatures between 54 and 55 degrees, except with respect to one apartment where the temperature was 63 degrees. The testimony established that the radiators at that time were cold to the touch; that the valves of the radiators were cold to the touch; that the valves of the radiators were open and that the windows were closed. Based upon these facts, the court finds the defendant guilty of failing to furnish adequate heat on December 21, 1981. On December 22, 1981 at 4:00 p.m., the outside temperature was 40 degrees but the temperature in apartment IB was 67 degrees, although the temperatures at apartments 3A and 3B were 58 degrees and 59 degrees. It is apparent that there was heat within *282 the premises and the court has a reasonable doubt of the defendant’s guilt on that date and therefore finds the defendant not guilty of the charges on December 22,1981. On December 23,1981 while the outside temperature was 50 degrees, neither the radiators, valves, windows or ovens were checked. Under the circumstances, the court finds reasonable doubt and finds the defendant not guilty of the charge on December 23, 1-981. On January 6, 1981 at 1:00 p.m., the temperature in the building ranged from 62 to 63 degrees in two of the apartments and in one apartment was 67 degrees. These temperatures create some reasonable doubt, particularly since the bathroom risers were warm, indicating that heat was flowing into the building. The defendant is therefore found not guilty on the charge on January 6, 1982. On January 7, 1982 at 2:30 p.m. the outside temperature was established at 35 degrees and the inside temperatures were established at 57 to 59 degrees. The radiators were cold to the touch; valves were open and windows closed. With respect to such date, the court finds the defendant guilty as charged.