OPINION OF THE COURT
Per Curiam.
Judgment entered October 20, 1995 reversed, and new trial ordered with $30 costs to abide the event.
*314 Plaintiffs and defendants are neighbors who share occupancy of a two-family residence located in a residentially zoned area of Bronx County. Plaintiffs commenced this action seeking damages based upon a private nuisance allegedly created by defendant Joseph Vallone’s "loud music playing”. The plaintiffs specifically complained of defendant Joseph Vallone’s use of the premises for individual guitar practice and weekly band rehearsals, as well as the "loud and intense” music allegedly produced on his home and car stereo systems. The trial record shows, and it is not seriously disputed, that the band rehearsals found objectionable by plaintiffs ended in July of 1991, approximately five months after defendants initially moved into the premises. As for the remaining sound sources, the parties presented conflicting testimony regarding the level and frequency in occurrence of the musical "noise” created and permitted by defendants.
Civil Court determined after trial that the conduct of defendant Joseph Vallone in "allow[ing] himself instant gratification of his musical appetites” (Stiglianese v Vallone, 168 Misc 2d 446, 457) had created a private nuisance entitling plaintiffs to recover substantial compensatory and punitive damages. In so ruling, the trial court relied heavily upon a "descriptive journal” kept by plaintiffs containing, among other entries, a list of numerical notations purporting to represent measurements of the decibel levels generated by defendants’ music on various dates and times. On the basis of these journal notations the trial court concluded that defendants had violated local noise regulations (see, Administrative Code of City of NY § 24-201 et seq. [Noise Control Code]) on some 94 occasions between August 1991 and March 1994, and this despite the court’s ready acknowledgment that "there was no expert testimony as to the accuracy of plaintiffs’ meter readings, nor any Noise Code violations or determinations issued by the Environmental Control Board” (168 Misc 2d, supra, at 455), the agency charged with primary responsibility for enforcing the Noise Control Code. It need be emphasized that the noise level figures relied upon by the trial court were compiled by the lay plaintiffs through use of a vaguely described and unproduced "noise meter”, and were admitted into evidence without any independent foundation testimony whatsoever as part of a written log whose ostensible purpose was not to show any Noise Control Code violations but merely to chronicle the "different days” on which plaintiffs felt "annoyed” by defendants’ music. Even assuming the accuracy of plaintiffs’ testing device, the *315 inherent unreliability of the decibel readings contained in the journal is underscored by the lack of any competent showing that plaintiffs’ testing procedures otherwise complied with Noise Control Code standards, most particular the requirement that decibel levels be "measured for any one hour” time period (Administrative Code § 24-243 [b]). In these circumstances, the trial court’s consideration of the decibel readings set out in plaintiffs’ journal as competent proof of defendants’ violation of the Noise Control Code and of their civil liability herein constituted fundamental error (see, Hoover v Durkee, 212 AD2d 839, 841; Mandel v Geloso, 206 AD2d 699; Fisch, New York Evidence § 417 [2d ed]; cf., People v Brown, 115 Misc 2d 277, 280-281).* The prejudice accruing to defendants is obvious, especially given the trial court’s contradictory action in refusing to admit into evidence the defendants’ own informally maintained decibel readings for the purpose of showing compliance with the Noise Control Code, evidence rejected by the court for reasons equally applicable to plaintiffs’ journal notations: "We do not have any experts to, in fact, determine whether this [i.e., the testing device used] is calibrated * * * for the purposes for which it is intended.”
Leaving aside the substantial evidentiary error, the trial court’s finding of an actionable nuisance appears to have been founded in part on several extraneous factors. Most troubling is the reference in the court’s written decision to defendant Joseph Vallone’s apparent status as an amateur musician. In this regard the trial court, after correctly pointing to the historical "aversion” of courts of both civil and criminal jurisdiction "to make a finding for noise nuisance” and noting the "prevailing philosophy * * * that noise * * * [is] an inescapable reality of urban life” (168 Misc 2d, supra, at 452), abruptly veered into its finding of nuisance on the stated ground that it was "[significant” that defendant Joseph Vallone "is not a musician or artist in pursuit of excellence in a vocation.” (Supra, at 453.) The dispositive question of whether the music played and listened to by defendant Joseph Vallone constituted a nuisance should turn not upon such subjective considerations as that defendant’s musical tastes or abilities, *316 but instead, must be determined, according to objective legal standards, based upon the reasonableness of his use of the property and the extent and duration of any interference caused thereby to the plaintiffs’ property rights (see, Copart Indus. v Consolidated Edison Co., 41 NY2d 564, 570; see also, Langan v Bellinger, 203 AD2d 857; Lewis v Stiles, 158 AD2d 589). In directing a new trial, we express no opinion on the proper resolution of these fact-laden issues.
 Defendants’ argument that the $30,000 combined award of compensatory and punitive damages was unauthorized and lacking in evidentiary support also is meritorious. As a threshold matter, the aggregate award impermissibly exceeded the $25,000 monetary jurisdictional limit of the Civil Court (CCA 202). A demand for punitive damages does not constitute a separate cause of action distinct from the substantive cause upon which it is grounded (see, Rocanova v Equitable Life Assur. Socy., 83 NY2d 603, 616-617), and thus a punitive award may not be used to piggyback a plaintiff’s recovery of damages to an amount beyond the Civil Court’s monetary ceiling (see, Ferguson v Abraham & Straus, NYLJ, May 18, 1979, at 12, col 6 [App Term, 2d Dept]). In any event, we find no substantive support for an award of punitive damages, there being no showing that the conduct attributed to defendants was actuated by evil or reprehensible motives (see, Walker v Sheldon, 10 NY2d 401, 404; Taylor v Leardi, 120 AD2d 727).
With respect to compensatory damages, the trial court erroneously concluded that "there is no specific rule as to the measurement of damages for a private nuisance” (168 Misc 2d, supra, at 453). To the contrary, the proper measure of damages in private nuisance cases is clear and easily defined as the diminution in either the rental value or usable value of the affected realty, at the plaintiff’s election (see, 2 NY PJI 73 [1997 Supp]). To the extent that the court’s $25,000 compensatory award reflects a finding that the plaintiffs were completely and "continuous[ly]” deprived of the "reasonable and beneficial enjoyment” of their property for a period exceeding three years (168 Misc 2d, supra, at 457), the award finds support in neither the testimony offered by plaintiffs’ own real estate expert nor the record as a whole. We note finally that, contrary to the view expressed below (168 Misc 2d, supra, at 454-455), the schedule of civil penalties set out in the enforcement subchapter of the Noise Control Code (see, Administrative Code § 24-257) does not provide a "useful guide” and, indeed, is irrelevant in fixing compensatory damages in a plenary action sounding in private nuisance.

 Since, as indicated, plaintiffs’ journal was offered into evidence to show the number of incidents of noise "disturbance” and not their level or intensity, the absence of defense objection at the time of receipt of the journal does not preclude appellate review of the trial court’s improper consideration of the journal as scientific proof of the decibel levels prevailing at the premises (see, Leonard, Selected Rules of Limited Admissibility, The New Wigmore §§ 1.7, 1.11.1 [1996]).