[906 NYS2d 549]

61 WEST 62 OWNERS CORP., Appellant, v CGM EMP LLC et al., Respondents, et al., Defendant.

First Department, August 24, 2010

## APPEARANCES OF COUNSEL

*Wolf Haldenstein Adler Freeman & Herz LLP*, New York City (*Christopher Cobb* of counsel), for appellant.

*Windels Marx Lane & Mittendorf, LLP*, New York City (*Bruce Bronster, Gregory J. Kerr* and *Joseph Abt* of counsel), for CGM respondents.

*Cozen O'Connor*, New York City (*Michael C. Schmidt* and *Menachem J. Kastner* of counsel), for West 63 Empire Associates LLC, respondent.

## OPINION OF THE COURT

CATTERSON, J.

The plaintiff is the owner of a residential cooperative apartment building. On or about June 10, 2008, the defendants began to operate a bar on the rooftop of a 12-story building adjacent to the cooperative. Less than a year later, the plaintiff commenced this action, alleging that the defendants "play or permit to be played music at extremely loud levels," thus tormenting the cooperative's residents whose apartments are near the bar. The plaintiff also alleged that the pounding and other noise often continues until 3:00 A.M.

The plaintiff contended the defendants created a nuisance that degraded the residents' quality of life and diminished their property values. The plaintiff sought a permanent injunction to prohibit the congregating of persons in the nonenclosed areas of the rooftop, as well as the emanating of noise at unlawfully loud levels in violation of the New York City Noise Control Code. The cooperative further asked for an award of money damages for the extreme nuisance created, should the court decide that an adequate remedy existed at law.

On May 26, 2009, the plaintiff moved by show cause order for a preliminary injunction prohibiting the bar's use of the open

roof deck as well as the excessive noise attendant thereto. In support of the order to show cause, the plaintiff submitted affidavits from nine residents of the cooperative describing the disturbances they experienced, the steps they had taken to try to deaden the noise, and the complaints they made to defendants and to the City.

The plaintiff also submitted an affidavit from a professional engineer who stated that the plans filed with the Department of Buildings (hereinafter referred to as the DOB) show that the bar was to operate almost entirely as an enclosed structure with only a small open area on the west side of the building, the area farthest away from the cooperative. The engineer maintained there should be no use of the east terrace, the area closest to the cooperative. Furthermore, he stated that the bar was operating without a certificate of occupancy, that the area lacked sufficient live load capacity, and that its occupancy exceeded that set by the DOB with insufficient egress.

The plaintiff also submitted an affidavit from an acoustical consultant who set up sound-measuring equipment in apartment 16M of the cooperative over a period from Thursday to Sunday, April 16-19, 2009. The consultant reported that the noise level *inside* the apartment from the music played at the bar consistently exceeded 66 decibels,* which, in effect, was 100 times more intense than the legal limit of 45 decibels, and that such levels were achieved at times including 11:28 P.M. on Thursday, April 16 and 12:34 A.M. on Saturday, April 18. The consultant also stated that the sound did not come from traffic or other outside sound, and that it was clear to him that the bar had not installed sufficient soundproofing on its premises.

Jeffrey Chodorow, a member of defendant CGM, submitted an affidavit stating that the bar consists of three sections: an open-air east terrace, a smaller west terrace with a retractable roof that is opened when weather permits, and a completely enclosed indoor central area. Music is played in the central and west terrace sections during the hours of operation, Sunday through Wednesday from 5:00 P.M. to midnight, and Thursday through Saturday from 5:00 P.M. to 4:00 A.M., and on the east terrace until 11:30 P.M. on weekdays and 12:30 A.M. on Fridays and

---

* We take judicial notice of the following: the decibel is the unit used to measure the intensity of sound, with the smallest audible sound (near total silence) as 0 dB. A sound 10 times louder than near silence is 10 dB; 100 times more powerful is 20 dB; 1,000 times more powerful is 30 dB, etc. Thus, the logarithm underlying the acoustic measurement is a base-10 logarithm.

Saturdays, as an accommodation to the cooperative's residents. Chodorow contended that although the bar's liquor license contains no such restrictions, patrons are asked to vacate the east terrace after those times, and those who go there to smoke are reminded by security to talk softly and stay as far away from the cooperative as possible. Although the temporary certificate of occupancy had expired, all work required to renew it was done, and no violations were issued. Furthermore, Chodorow asserted that the bar has never been issued any violations for noise by the New York City Department of Environmental Protection (hereinafter referred to as the DEP).

On May 26, 2009, the parties appeared for oral argument. The defendants reiterated that despite numerous complaints and visits from City agencies, no violations were ever issued. They also questioned the efficacy of the cooperative's acoustical consultant's test, inasmuch as he had left his equipment in the control of the tenant. The defendants speculated that the tenant could have moved the equipment or put a radio on or near it, and they noted that if forced to close down, they would be unable to conduct their own testing. The plaintiff's counsel responded that the plaintiff did not want to shut down the bar, but just wanted it to comply with the noise code.

The IAS court denied the plaintiff's request for a temporary restraining order, and ultimately a preliminary injunction, noting that the plaintiff had not demonstrated a likelihood of success on the merits of the private nuisance claim, and that DEP had never issued any violations to the bar. (2009 NY Slip Op 31739[U].) It found that the plaintiff's right to enjoin the operation of the bar was neither clear nor practically beyond dispute, as the issue of violation of the Noise Control Code was in stark dispute. Weighing the equities, it found no precedent for granting relief that would upset the status quo and potentially hurt the bar's business. The court noted that while it was mindful of the distress and discomfort described by the residents, the cooperative had not met the requirements for a provisional remedy interfering with the operation of a bar. For the reasons that follow, this was error, and the failure to enjoin the excessive noise was an abuse of discretion.

On appeal, the plaintiff contends that the court cited the correct standard applicable to claims of private nuisance, but failed to apply it, in that the defendants' invasion of the plaintiff's interests in the use and enjoyment of its property was indeed unreasonable. It further contends that the court should have

found it entitled to a preliminary injunction, for the same reason.

At the outset, we note that the elements of the common-law cause of action for a private nuisance are: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act" (*Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 570 [1977]).

It is wholly immaterial to maintaining an action for nuisance at common law whether or not DEP, or indeed any municipal authority, has issued noise ordinance violations. The plaintiff has adequately pleaded all the necessary elements, and the only question is whether or not the plaintiff is entitled to the relief afforded by a provisional remedy. The dissent's position that "[h]owever the cause of action is denominated, relief must be predicated on defendants' violation of the New York City Noise Control Code" is unsupported by citation to any authority whatsoever. To adopt such a view would make any common-law cause of action dependent on the existence of an Administrative Code violation, a construct alien to New York law. Similarly, the dissent's extended discussion of the Noise Control Code is simply inapplicable to a cause of action sounding in nuisance.

In order to obtain a preliminary injunction, the plaintiff was required to put forth evidence demonstrating "(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in [its] favor." (*Doe v Axelrod*, 73 NY2d 748, 750 [1988].)

Through the affidavits of the residents, the plaintiff demonstrated that the interference was substantial in that the noise greatly exceeded the maximum allowed by ordinance. The cooperative also demonstrated that the noise was intentional and caused by another's conduct because it was a product of the bar's use of the outside roof deck in furtherance of its own commercial purposes. The noise level, as well as the time of night, also established the third and fourth elements of the cause of action, that the interference was unreasonable and affected the residents' right to use and enjoy their respective apartments. (*See e.g. Zimmerman v Carmack*, 292 AD2d 601, 602 [2d Dept 2002] [allegations defendants' "outside stereo playing so loudly that the police were required to come and disconnect the wires . . . adequately pleaded a cause of action sounding in nuisance"].)

In opposition, the defendants offered nothing but the largely identical affidavits of Chodorow and the bar manager, which contained inadmissible hearsay, their own estimates that the music was not loud, and allegations that the residents failed to call and complain about the noise. Contrary to the finding of the IAS court, the plaintiff has thus demonstrated a likelihood of success on the merits. The dissent's contention that the cooperative's expert failed to adhere to "test conditions approved by the Commissioner of Environmental Protection" is irrelevant to the plaintiff's burden on its action for nuisance.

The plaintiff also satisfied the second element for a preliminary injunction, that of irreparable harm. The affidavit of the cooperative's expert wherein he established that the noise complained of was approximately four times the legal limit for the residential neighborhood was unrebutted by competent proof. Furthermore, the affidavits of the residents detailed the nightly assault on the quiet enjoyment of their respective apartments. (*See Zimmerman v Carmack, supra; Stiglianese v Vallone*, 168 Misc 2d 446 [Civ Ct, Bronx County 1995], *revd* 174 Misc 2d 312 [App Term, 1st Dept 1997], *revd and judgment reinstated* 255 AD2d 167 [1st Dept 1998].)

Finally, the plaintiff has established that the balance of equities tips decidedly in favor of the cooperative and its residents. The plaintiff, as noted above, is the owner of a building whose residents have a right to enjoy their apartments in peace, especially during late night hours. The defendants operate a bar that has seasonal use of an outdoor roof deck. There is no evidence of record that either the use of the roof deck or the playing of music louder than permitted by law on the deck is a significant and necessary part of the bar's business operations and income. There is no evidence of record that the bar requires the use of the roof deck in the late night hours, other than for a patrons smoking area outside the bar's enclosed premises. Thus, were the scope of the injunction limited to the playing of music on the terrace alone, it would appear from the record to have no impact on the bar's business whatsoever. We have considered the defendants' remaining arguments and find them without merit.

Accordingly, the order of the Supreme Court, New York County (Debra A. James, J.), entered August 3, 2009, which denied the plaintiff's motion for a preliminary injunction, should be reversed, on the law, without costs, and the matter remanded for an appropriate provisional remedy.

Tom, J.P. (dissenting). The imposition of the preliminary injunction in this case is unsupported by a sufficient record. However the cause of action is denominated, relief must be predicated on defendants' violation of the New York City Noise Control Code (Administrative Code of City of NY § 24-201 *et seq.*), which governs permissible acoustic levels produced by a particular sound source. Furthermore, plaintiff's failure to pursue available legal remedies precludes this action for permanent injunctive relief and the grant of attendant provisional relief. In view of plaintiff's failure to establish a clear right to the ultimate remedy sought in the complaint, there is no basis to conclude that Supreme Court's denial of a provisional remedy was an abuse of discretion (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839 [2005]; *cf. Doe v Axelrod*, 73 NY2d 748 [1988]).

This action by plaintiff cooperative corporation seeks a permanent injunction against noise emanating from The Empire Hotel Rooftop Bar and Lounge (the bar), owned and operated by defendants, which began conducting business in June 2008. Alternatively, in the event plaintiff is found to have an adequate remedy at law, the complaint seeks monetary damages in the amount of $10,000,000 on the basis of nuisance and negligence. The complaint alleged that (1) defendants are using the premises in violation of the building code and zoning law, (2) the bar is emitting sound levels in excess of the levels permitted by the Noise Control Code, and (3) the establishment is maintaining a nuisance by permitting noise at "unreasonably loud and disturbing levels." On appeal, plaintiff has abandoned its claim that the premises are operated in violation of applicable building code and zoning law provisions.

Upon commencement of the action, plaintiff sought a temporary restraining order and preliminary injunction against the bar (1) allowing patrons to congregate in unenclosed portions of the rooftop area, (2) permitting noise in excess of the levels permitted by the Noise Control Code, and (3) permitting the complained-of "loud and disturbing" sound levels. Supreme Court denied the temporary restraining order and, in the order appealed from, denied the motion for preliminary relief. (2009 NY Slip Op 31739[U].) The court found that plaintiff, having conceded that no noise violation has ever been issued against the bar by the police or any regulatory agency, failed to demonstrate a likelihood of success on the merits of its action. The court further found "no precedent for granting relief that would upset the status quo and potentially harm the bar's business." (*Id.* at *8.)

On an application under CPLR 6301, the "party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door*, 4 NY3d at 840). As this Court has observed, "A preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits" (*Residential Bd. of Mgrs. of Columbia Condominium v Alden*, 178 AD2d 121, 122 [1991]).

As to the merits of plaintiff's application, the issue is not, as the majority frames it, whether plaintiff can maintain an action for private nuisance, but whether plaintiff has stated a claim for permanent injunctive relief and, if so, whether plaintiff has established its entitlement to a provisional remedy so as to warrant a finding that Supreme Court abused its discretion in denying preliminary injunctive relief. It is not sufficient to apply the low threshold required to sustain a cause of action against dismissal to an application for a preliminary injunction, which is governed by significantly more exacting requirements.

Plaintiff has not made the requisite showing of entitlement to a provisional remedy. Defendants assert that the cooperators have called the City's 311 assistance line to complain about noise, and as a result, the Police, Fire, Health and Buildings Departments have visited the bar on several occasions, but no violations for noise have ever been issued. Even if, as the majority insists, the absence of any noise violations is deemed to be immaterial to plaintiff's right to maintain the action, it is immediately pertinent to deciding both whether plaintiff is likely to succeed on the merits of its claim and whether it has established a compelling need for preliminary injunctive relief.

Plaintiff's application was made prior to discovery, and the record fails to establish the strong likelihood of success on the merits necessary to warrant provisional relief. As this Court has noted, "Preliminary injunctive relief is a drastic remedy and will only be granted if the movant establishes a clear right to it under the law and the undisputed facts found in the moving papers" (*Koultukis v Phillips*, 285 AD2d 433, 435 [2001]).

The only evidence that the noise level in any cooperative dwelling unit exceeded legal limits is the affidavit of plaintiff's acoustical expert, Alan Fierstein, who placed a sound level meter in the master bedroom of apartment 16M, recording a maximum sound level of 45 decibels (dB). According to the affidavits

submitted by both the expert and the apartment owners, the sound measuring equipment was placed three feet from an open window. Examination of Noise Control Code provisions, however, casts considerable doubt upon this methodology. While Administrative Code § 24-232 (a) provides that the sound level for various frequency bands shall not exceed specified corresponding levels "as measured within any room of the residential portion of the building with windows open, if possible," section 24-232 (d) expressly provides that this provision "shall not apply to . . . music . . . devices or activities." Section 24-231 (a) (1), applicable to commercial music, provides that the sound level, "as measured inside any receiving property dwelling unit," shall not exceed 45 dB in any of certain frequency bands, but unlike section 24-232 (a), does not specify that apartment windows remain open during testing. In view of similar provisions governing particular noise sources that specify a measurement be taken three feet from the open window or door (*e.g.* Administrative Code § 24-227 [a] ["Circulation devices"]), the absence of such a requirement in the commercial music provision cannot be dismissed as a mere oversight. Thus, it does not appear that the expert obtained his results under test conditions approved by the Commissioner of Environmental Protection (Administrative Code §§ 24-204, 24-206 [b]) so as to be accepted without reservation. The expert failed to respond to the criticisms of his sound testing methodology at the hearing on May 26, 2009.

This is an instance where "the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *see also Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 371 [1999]), and the "special competence or expertise of the administrative agency and its interpretive regulations" are necessary to evaluate the significance of the data (*Kurcsics*, 49 NY2d at 459; *see Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971]). In short, even ignoring the lack of any opportunity by defendants to engage their own expert to conduct noise testing and fully crediting Mr. Fierstein's data, its significance is uncertain and affords an insufficient basis to support a provisional remedy. *Stiglianese v Vallone* (255 AD2d 167 [1998]), cited by the majority, does not warrant a contrary conclusion. There, this Court sustained a

decision rendered after trial, at which sound level measurements taken by complainants were admitted into evidence without objection, and the trial court found that the sound level of the offending sound system was "above the legal sound limit allowed for *commercial* music produced by a commercial establishment, as measured inside a residential unit" (*see* 168 Misc 2d 446, 451). Thus, any issue with respect to the accuracy of plaintiff's data was unpreserved for this Court's review.

Because of the need for special expertise, it is appropriate that the findings first be evaluated at the administrative level (*see Koultukis*, 285 AD2d at 435). Moreover, by crediting the conclusions proffered by plaintiff's expert, at the very outset of litigation and without the opportunity for defendants to conduct their own testing, the majority offends the general principle that the weight to be accorded expert testimony is ultimately a matter for resolution by a jury (*Windisch v Weiman*, 161 AD2d 433, 437 [1990]). Plaintiff confirms that the cooperative residents have refused defendants access to their apartments in order to allow them to do their own testing. It is within the province of the trier of fact to determine the weight to be accorded to opinion testimony offered by an expert witness, as assessed against other credible evidence (*see Matter of Sylvestri*, 44 NY2d 260, 266 [1978]). Even in the absence of a conflict in testimony, expert testimony need not be credited but "ordinarily is entirely for the determination of the jury" (*Commercial Cas. Ins. Co. v Roman*, 269 NY 451, 456-457 [1936]; *see Herring v Hayes*, 135 AD2d 684 [1987] ["The trier of fact is not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other testimony and/or the facts disclosed on cross-examination of the expert witness"]). Since the expert's findings were questionable, the court properly declined to rely on the cooperators' affidavits alone.

Finally, it should be noted that while a complaint of excessive noise can be stated as both a cause of action for private nuisance and a violation of the Noise Control Code, in either event a court must assess liability under the detailed criteria provided in the ordinance, rendering the private nuisance cause of action redundant. It is apparent that the majority recognizes the duplication, concluding on the basis of the minimal preliminary record that "the noise greatly exceeded the maximum allowed by ordinance."

It is the function of a court in interpreting a statute to carry out the legislative intent behind its enactment (*see Thoreson v*

*Penthouse Intl.*, 80 NY2d 490 [1992]; McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]). It is a corollary to this principle that the "courts will not construe statutes, or rules and regulations of a government agency in such a manner as to thwart the obvious legislative intent and reach absurd and unexpected consequences" (*Matter of Friedman-Kien v City of New York*, 92 AD2d 827, 828 [1983], *affd* 61 NY2d 923 [1984]). If plaintiff is permitted to proceed on a theory of private nuisance based on the premise that the complained-of sound was subjectively disturbing, the effect would be to render nugatory the Noise Control Code's detailed specifications of permissible sound emission levels and its commercial sound provision applicable to the bar's operation.

*Zimmerman v Carmack* (292 AD2d 601 [2002]) is not to the contrary. There, noise generated by an exterior stereo left playing, together with the accumulation of garbage, dog waste, diapers and rotting food adjacent to the plaintiffs' property, was found sufficient to state a cause of action for private nuisance. While Civil Court in *Stiglianese* opined that the Noise Control Code merely "supplements the common-law parameters of the extent, nature and intensity of permitted noise levels in our urban setting" (168 Misc 2d at 450), that position has never been endorsed by this Court. Meanwhile, Appellate Term stated in that case that the extent of any interference with the plaintiffs' use of their property should be assessed on the basis of "objective legal standards," not "subjective considerations" (174 Misc 2d 312, 315-316). In any event, the finding of private nuisance in *Stiglianese* does not rest exclusively on excessive noise, and that case is thus distinguishable.

The public policy sought to be advanced by the Noise Control Code is that "every person is entitled to ambient sound levels that are not detrimental to life, health and enjoyment of his or her property" (Administrative Code § 24-202). The detailed criteria for evaluating whether a particular sound level violates that policy would be obviated if noise complaints were subjected to ad hoc evaluation by the courts attempting to substitute their limited expertise for the "special competence or expertise of the administrative agency" (*Kurcsics*, 49 NY2d at 459) charged with enforcement of the ordinance. Therefore, irrespective of whether a plaintiff can state a cause of action for private nuisance, whenever, as here, the Noise Control Code provides a precise standard for the determination of whether the complained-of sound level is excessive, the courts are obliged to

apply the mandated standard and any governing regulations promulgated under the ordinance.

Furthermore, while there is no question that plaintiff has standing to maintain this action on behalf of the owners of the shares allocated to two or more units "with respect to any cause of action relating to the common elements or more than one unit" (Real Property Law § 339-dd; *see e.g. East End Owners Corp. v Roc-East End Assoc.*, 128 AD2d 366, 370 [1987]), a party may pursue an equitable remedy only in the absence of the availability of other adequate relief. Simply because a party has access to the judicial forum does not automatically bestow a right to equitable injunctive relief in Supreme Court. It is settled that "the extraordinary remedies . . . of injunctive and declaratory relief[ ] are available 'only where resort to ordinary actions or proceedings would not afford adequate relief' " (*Gaynor v Rockefeller*, 15 NY2d 120, 132 [1965] [availability of proceeding before State Commission for Human Rights precludes aid in equity], quoting *Rockland Light & Power Co. v City of New York*, 289 NY 45, 51 [1942] [declaratory judgment]; *see Cox v J.D. Realty Assoc.*, 217 AD2d 179, 181 [1995] [preliminary injunction]). Since neither plaintiff nor any of the share owners of the cooperative corporation has attempted to pursue either of two distinct administrative remedies or demonstrate the ineffectiveness of available administrative sanctions, plaintiff should not be allowed to invoke the court's equitable jurisdiction.

As to the grant of preliminary relief, plaintiff has offered no reason why it should be accorded the extraordinary relief of an injunction that—rather than preserving the status quo—awards the remedy ultimately sought in the action. While asserting in conclusory fashion in the complaint that the cooperative "has no adequate remedy at law," plaintiff offers no explanation why it has failed to pursue a more expeditious administrative remedy. While the second cause of action seeks relief under the Noise Control Code, plaintiff does not explain why the bar's habitual violations of the Noise Code have not been brought to the attention of New York City's Department of Environmental Protection (DEP), which possesses ample power to redress the grievance including the imposition of substantial civil penalties (Administrative Code § 24-257 [b] [5] [Table I]), the issuance of cease and desist orders (§ 24-257 [b] [4]) and the sealing of offending sound

equipment (§ 24-257 [b] [3]). Nor does plaintiff explain why it did not enlist the offices of the New York State Liquor Authority, which is vested with supervisory authority over the bar and is empowered to suspend its liquor license (effectively suspending its operation) on the ground of excessive noise (*see Matter of Beer Garden v New York State Liq. Auth.*, 79 NY2d 266, 276 [1992] [disorderly conduct under Alcoholic Beverage Control Law § 106 (6) includes excessive noise]; *Matter of Circus Disco v New York State Liq. Auth.*, 51 NY2d 24, 35 [1980]; *cf. Matter of Culture Club of NYC v New York State Liq. Auth.*, 294 AD2d 204 [2002]).

Before Supreme Court, plaintiff attempted to discount the effectiveness of monetary sanctions that might be imposed by DEP as inadequate, representing that the maximum penalty available under the Noise Control Code for violation of its "Commercial music" provision (Administrative Code § 24-231) would be only $8,000. This is inaccurate. In fact, the maximum penalty is $8,000 for *each day* the violation persists ($16,000 for a second violation and $24,000 for a third violation found to have occurred within a two-year period), an amount sufficient to consume the profit of a business establishment (Administrative Code § 24-257 [b] [5] [Table I]). Plaintiff has thus not established that it lacks an adequate remedy at law so as to require resort to a proceeding in equity.

While arguing the deleterious effect of noise emanating from the bar on residents of the cooperative's building, plaintiff does not explain why it took nearly a year to pursue what it now claims is the need for immediate relief. As reflected in the complaint, while the bar has been open for business since June 2008, this action was not commenced until late May 2009. Affidavits accompanying the motion for a preliminary injunction allege that the noise condition has been extant since the bar began operation. Yet no relief was sought until the instant motion for preliminary injunctive relief was brought nearly a year later. Plaintiff has not established any change in circumstances, such as a sudden increase in the noise level, that would warrant upsetting the status quo that was in place during the year prior to the filing of the motion. Nor has plaintiff explained why, if the sound emanating from the bar was so disturbing, no effort was made to pursue alternative remedies to obtain relief for cooperative share owners. The delay in seeking a remedy in any forum for a year militates against plaintiff's claim that immediate injunctive relief is imperative.

Accordingly, the order should be affirmed.

MOSKOWITZ and DeGRASSE, JJ., concur with CATTERSON, J.; TOM, J.P., dissents in a separate opinion.

Order, Supreme Court, New York County, entered August 3, 2009, reversed, on the law, without costs, and the matter remanded for an appropriate provisional remedy.