[940 NYS2d 4]

Mathias Berenger et al., Respondents, v 261 West LLC et al., Appellants, et al., Defendants.

First Department, February 2, 2012

## APPEARANCES OF COUNSEL

*Greenberg, Trager & Herbst, LLP*, New York City (*Richard J. Lambert* of counsel), for appellants.

*Law Offices of Bryan W. Kishner and Associates*, New York City (*Bryan W. Kishner* and *Ryan O. Miller* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

This action for, inter alia, trespass and nuisance arises out of alleged emanations of noise and glycol, a liquid antifreeze, from a cooling tower located on the roof of a condominium on West

28th Street in Manhattan. This causes us once again to reiterate the elements of those common-law claims. The plaintiffs purchased a penthouse unit in the condominium on November 15, 2006 from defendant, 261 West LLC, the sponsor of Onyx Chelsea Condominium, pursuant to a purchase agreement and offering plan. The defendants Bronfman and Haymes are members of 261 West LLC, and, along with defendant Curty, also members of the board of managers of the Onyx Chelsea Condominium.

Among other provisions, the offering plan set forth the rights and obligations of the sponsor, 261 West. The plan stated that the sponsor "will correct, repair, or replace any and all defects relating to construction of the [b]uilding, [c]ommon [e]lements or the [r]esidential [u]nits," and that "nothing contained in this section will be construed so as to render sponsor liable for money damages (whether based on negligence, breach of contract, breach of warranty, or otherwise)."

The following facts are established in the record: On January 24, 2005, Cerami and Associates (hereinafter referred to as Cerami), an acoustical engineering firm, prepared a report for the management company containing recommendations for the building. The report expressed concern that sound transmission from the cooling tower on the rooftop to the penthouse windows would not meet building code requirements. Cerami noted that although there were no specific code requirements for the terrace, a level of 65 dBA would interfere with conversation.[1] Based on the manufacturer's data, Cerami estimated that the noise level on the terrace would be 70 dBA and recommended installing the "manufacturer's intake package" in order to reduce the noise. In a November 10, 2006 follow-up report, Cerami noted that 261 West did not install the recommended noise reduction package and reiterated the necessity of the package to meet the building code requirements.

It is undisputed that the offering plan did not depict the cooling tower in architectural renderings nor the penthouse floor plan. However, the plaintiffs testified at deposition that they visited the unit a number of times prior to closing, and plaintiff Harris testified that she saw the tower during a pre-closing inspection. The plaintiffs purchased the penthouse unit and commenced occupancy in December 2007.

Beginning on March 13, 2008, the plaintiffs e-mailed a series of complaints to the managing agent about the noise emanating

---

1. A decibel (dBA) is a unit used to measure the intensity of sound.

from the cooling tower. On June 23, 2008, the plaintiffs' counsel sent a letter to Haymes, then president of the condominium board, advising him of the plaintiffs' noise complaints, and demanding immediate correction of the problem. Counsel sent another letter to Haymes on July 3, 2008, reiterating the complaints and alleging noise levels of 85 dBA.

On or around July 31, 2008, the plaintiffs filed a complaint with the New York Attorney General's Office, alleging, inter alia, "unacceptable decibel levels," which was forwarded to counsel for 261 West. On December 8, 2008, Cerami sent a letter to the New York Attorney General's Office stating that its test of the cooling tower area revealed no noise violations. In an affidavit, the plaintiffs' licensed engineer stated that on June 10, 2009, the decibel level was 78 to 80 dBA in violation of the noise ordinance and building code.

The record also indicates that from September 12 to December 3, 2008, the plaintiffs sent four complaints to the managing agent about leaks in their apartment. On June 5, 2009, the plaintiffs e-mailed the managing agent complaining about "foul smells" emanating from their vents, and the sound of running water in the pipes. On June 8, 2009, the plaintiffs sent another e-mail to the managing agent stating that they learned that glycol was leaking from the cooling tower. They attributed the odor in the penthouse, which had been ongoing since January 2009, to the glycol. The e-mail also advised the managing agent that a hazardous materials representative from the New York City Department of Environmental Protection (hereinafter referred to as DEP) inspected the leak and confirmed the presence of glycol. DEP instructed the mechanical corporation to clean up the area and repair the leak.

In an affidavit, the mechanical corporation attested that it began repairing the cooling tower on June 9, 2009. On June 12, 2009, the Department of Health issued a notice of violation to 261 West which listed, inter alia, "some form of condensation noted dripping from a drainpipe out of the roof on the apt [*sic*] below, bubbling paint noted in the study area and odor noted."

On June 16, 2009, the plaintiffs again e-mailed the managing agent complaining about the odor. On June 23, 2009, the plaintiffs' chemical engineers sent a letter to them reporting a strong glycol odor around the cooling tower and in the plaintiffs' unit.

On July 29, 2009, the plaintiffs commenced this lawsuit against 261 West, Bronfman, Curty, Haymes, Onyx Chelsea Con-

dominium, the board of managers for the Onyx Chelsea Condominium (hereinafter referred to as the condo board), and managing agents BH 261 Manager LLC, alleging causes of action for trespass, nuisance, fraud and misrepresentation, and breach of fiduciary duty.[2] The plaintiffs also sought punitive damages and injunctive relief. Also on July 29, 2009, an air-conditioning consultant sent a letter to the managing agent confirming that the repairs were satisfactory. In an affidavit dated August 6, 2009, a representative of the mechanical corporation stated that the repairs "stopped the leak and prevented further leakage."

On August 10, 2009, the DEP issued a report noting that on June 26, 2009, the cooling tower was leaking glycol and that the "odors . . . were most likely from the glycol that was spilled and had spilled in past incidents." On August 11, 2009, the New York City Environmental Control Board (hereinafter referred to as ECB) issued a notice of noise code violation. The violation noted that the decibel level inside the plaintiffs' penthouse was 55 dBA, exceeding the 42 dBA permissible under Administrative Code of the City of New York § 24-227 (a) and (b). The plaintiffs amended their complaint on August 19, 2009, and on September 2, 261 West offered to install a sound attenuator on the cooling tower to alleviate the noise.

Defendants 261 West, Haymes, Bronfman and Curty moved for summary judgment dismissing all of the claims against them. Insofar as relevant, the court granted summary judgment only to the extent of dismissing the claims for punitive damages.

On appeal, the defendants contend that the plaintiffs' trespass and nuisance claims are in effect a breach of contract claim and, under the terms of the offering plan, monetary damages are not available. They also argue that there was only a single glycol leak, which was repaired. The defendants further argue that the Martin Act preempts the fraud and misrepresentation claims, since they are based on the plaintiffs' allegation that they acquired the penthouse in reliance on omissions in the offering plan. They also assert that there are no grounds upon which Bronfman, Curty, and Haymes may be held liable.

For the reasons set forth below, the motion court's decision is modified to the extent of granting summary judgment dismissing the fraud and misrepresentation claim as against

---

**2.** Defendants Onyx Chelsea Condominium, the condo board, and BH 261 Manager LLC are not parties to this appeal.

261 West and all claims as against Bronfman, Curty, and Haymes. As a threshold matter, the defendants' argument that the plaintiffs' claim is for breach of contract and recovery is limited by the election of remedies clause is unavailing. Although the plaintiffs allege defective construction of the cooling tower, their claims of trespass and nuisance are based upon the defendants' alleged intentional and recurring misconduct in permitting the leaks and noise to continue. Moreover, while provisions restricting recovery are generally enforceable, as a matter of public policy, a party will not be permitted to escape liability for damages arising from grossly negligent conduct or intentional wrongdoing. (*See Gross v Sweet*, 49 NY2d 102, 106 [1979] ["(t)o the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have been viewed as wholly void"]; *Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 AD3d 239, 244 [1st Dept 2007].) Thus, the motion court correctly concluded that because the plaintiffs allege intentional wrongdoing as to their trespass and nuisance claims and raise triable issues of fact as to whether the defendants' conduct was intentional, the defendants' liability could not be limited by the contract.

Although summary judgment as to the trespass and nuisance claims was therefore correctly denied, the motion court failed to properly distinguish between the trespass and nuisance claims. In this case, the plaintiffs specifically allege trespass as to the glycol leak and nuisance as to the noise from the cooling tower. Accordingly, our analysis focuses on the distinct claims.

Trespass is the invasion of a person's right to exclusive possession of his land (*Bloomingdales, Inc. v New York City Tr. Auth.*, 13 NY3d 61 [2009]), and includes the entry of a substance onto land. (*See Crown Assoc., Inc. v Zot, LLC*, 83 AD3d 765 [2011] [water]; *Duane Reade v Reva Holding Corp.*, 30 AD3d 229 [1st Dept 2006] [debris and water].) Trespass does not require an intent to produce the damaging consequences, merely intent to perform the act that produces the unlawful invasion. (*Phillips v Sun Oil Co.*, 307 NY 328 [1954].) Thus, "the act done must be such as 'will to a substantial certainty result in the entry of the foreign matter.'" (*See* 307 NY at 331, quoting Restatement [First] of Torts § 158, Comment *h*.)

In *Phillips*, the Court stated that in order to hold a defendant liable for trespass, "the intrusion must at least be the immediate or inevitable consequence of what [defendant] willfully does, or which [defendant] does so negligently as to amount to willful-

ness." (307 NY at 331 [citations omitted].) The Court found that the defendant in *Phillips* could not be held liable for trespass since there was no indication that the defendant "had good reason to know or expect" that the oil from its tanks was leaking and polluting its neighbor's well. (*Id.*)

Here, the defendants do not dispute that glycol leaked into the plaintiffs' penthouse, but assert that glycol leaked only once in June 2009 and that the cooling tower was immediately repaired. The defendants argue that because there is no evidence that they had notice of a glycol leak before June 2009 or that the leak was recurring, the plaintiffs cannot show that the defendants intentionally allowed the leak to continue.

■ However, the DEP report referring to "past incidents" of glycol spillage indicates that the glycol leaked on several occasions prior to June 2009. The plaintiffs' documented complaints of leaks and/or odors as early as September 2008 raise questions as to whether 261 West knew or should have known of the glycol leak and whether the leak was recurring such that 261 West had good reason to expect that the glycol would leak again. The plaintiffs therefore raise triable issues of fact as to whether 261 West, by intentionally not repairing the cooling tower until June 2009, caused glycol to enter the plaintiffs' property.

Unlike trespass, which arises from the exclusiveness of possession and requires a physical entry onto property, a claim of private nuisance arises from an interest in the use and enjoyment of property. The elements of a common-law claim for a private nuisance are: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." (*Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 570 [1977].) Nuisance is characterized by a pattern of continuity or recurrence of objectionable conduct. (*Domen Holding Co. v Aranovich*, 1 NY3d 117 [2003] [repeated verbal abuse and threats]; *see also 61 W. 62 Owners Corp. v CGM EMP LLC*, 77 AD3d 330 [1st Dept 2010] [noise occurring late every night], *mod on other grounds* 16 NY3d 822 [2011]; *Broxmeyer v United Capital Corp.*, 79 AD3d 780 [2d Dept 2010] [noise created by the operation of heating, ventilating and air-conditioning units]; *JP Morgan Chase Bank v Whitmore*, 41 AD3d 433 [2d Dept 2007] [noise from exhaust fans].)

In *61 W. 62 Owners Corp.*, the plaintiff submitted the affidavits of nine tenants as to the late-night recurrence of exces-

sive noise from a nearby rooftop bar. (77 AD3d at 332.) The plaintiff also produced an affidavit from an acoustical consultant who reported that the decibel levels of the music played at the bar late at night consistently exceeded the noise level permitted by ordinance. (77 AD3d at 332.) There, we found that the plaintiff sufficiently established the elements of a claim for nuisance on the merits. (77 AD3d at 334.) Similarly, in *Broxmeyer* (79 AD3d at 783) and *JP Morgan Chase Bank* (41 AD3d at 435), the plaintiffs presented evidence that noise generated by the continuing operation of rooftop air-conditioning units and/or exhaust fans prevented them from enjoying their apartments. This evidence, together with expert testimony that the noise levels violated applicable code provisions, satisfied the elements of a private nuisance claim.

In this case, the defendants argue that there is no evidence of excessive noise prior to the commencement of this action. They contend that Cerami's December 2008 testing indicated that the tower was in compliance with the noise code and that the ECB violation was not issued until August 2009. However, the plaintiffs provided documentation that their repeated complaints of ongoing excessive noise from the cooling tower began in March 2008, and that in July 2008 they advised the defendants that the decibel level of the noise was 85 dBA. The plaintiffs also submitted the affidavit of their licensed engineer who stated that on June 10, 2009, he recorded decibel levels of 78 to 80 dBA in violation of the applicable code and ordinance. The plaintiffs also presented evidence of the issuance of the ECB noise violation. This documentation raises issues of fact as to whether the noise was excessive and recurring, and therefore, substantial and unreasonable.

In order to bring a cause of action for private nuisance, a plaintiff must also show that the defendant's interference was intentional. (*Copart Indus.*, 41 NY2d at 570.) An interference is intentional when " 'the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct.' " (*Copart Indus.*, 41 NY2d at 571, quoting Restatement [First] of Torts § 825.)

Here, there are questions of fact as to whether, based on the 2005 and 2006 Cerami reports, 261 West was substantially certain that excessive noise would emanate from the cooling tower without installation of the recommended noise reduction package. The plaintiffs' documentation of noise complaints to the defendants also raises triable issues as to whether the de-

fendants knew that excessive noise was "resulting," and thus whether allowing the noise to continue was intentional.

■ However, the motion court erred in denying summary judgment to 261 West as to fraud and misrepresentation, and to the individual defendants as to all causes of action. There is no private right of action where the fraud and misrepresentation relies entirely on alleged omissions in filings required by the Martin Act. (*Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236, 247 [2009].) The Martin Act is a disclosure statute designed to protect the public from fraud in the sale of real estate securities and the Attorney General enforces its provisions and implementing regulations. (*CPC Intl. v McKesson Corp.*, 70 NY2d 268, 276-277 [1987]; *Kerusa Co. LLC*, 12 NY3d at 245.) However, a private action may be maintained where the claim alleges a basis for fraud that is distinct from the Martin Act. (*Assured Guar. [UK] Ltd. v J.P. Morgan Inv. Mgt. Inc.*, 80 AD3d 293 [1st Dept 2010].)

Here, as the defendants correctly assert, the gravamen of the plaintiffs' claims for common-law fraud and misrepresentation is predicated on alleged omissions in the offering plan as to the location and operation of the cooling tower. Because disclosures concerning the cooling tower are specifically required under the Martin Act (*see* 13 NYCRR 20.7), the plaintiffs' claims for fraud and misrepresentation against 261 West must be dismissed.

Even were the fraud and misrepresentation claims not precluded, in order to make a prima facie showing, the plaintiffs must establish, among other elements, that they relied upon the fraudulent misrepresentation, and that as a result, they were induced to engage in a specific course of conduct. (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478 [2007]; *Meyercord v Curry*, 38 AD3d 315 [1st Dept 2007].) Here, it is undisputed that the plaintiffs purchased the unit having previously seen the cooling tower. Thus, the plaintiffs cannot claim to have relied on any failure to depict the cooling tower in the offering plan or architectural plans when they decided to purchase the unit.

■ Furthermore, the motion court erred in denying summary judgment dismissal of all causes of action against Bronfman, Curty, and Haymes. The business judgment rule protects individual board members from being held liable for decisions, such as those concerning the manner and extent of repairs, that were within the scope of their authority. (*See Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530 [1990]; *Perlbinder v Board of Mgrs. of 411 E. 53rd St. Condominium*, 65 AD3d 985

[1st Dept 2009].) Here, it is undisputed that decisions concerning the repair and remediation of the cooling tower were within the individual defendants' authority as members of the condo board, and, therefore, their decisions are "shielded from judicial review by the business judgment rule." (*See e.g. Konrad v 136 E. 64th St. Corp.*, 254 AD2d 110 [1st Dept 1998], *lv dismissed and denied* 92 NY2d 1042 [1999].)

Nor do the plaintiffs make a case for "piercing the corporate veil" to hold Bronfman, Curty, or Haymes liable. In order to "pierce the corporate veil," the plaintiff must show that an individual defendant exercised domination with respect to the transaction in question and that such domination was used to commit a fraud against the plaintiff. (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993].) Unsubstantiated allegations are not sufficient to defeat a defendant's motion for summary judgment (*see Albstein v Elany Contr. Corp.*, 30 AD3d 210 [1st Dept 2006], *lv denied* 7 NY3d 712 [2006]), and the plaintiffs do not provide evidence of any factors which would justify holding the defendants individually liable.

Absent any allegation of independent tortious conduct, the individual defendants cannot be held liable for breach of fiduciary duty. (*See Pelton v 77 Park Ave. Condominium*, 38 AD3d 1 [2006].) Here, the plaintiff's complaint does not allege any conduct by Bronfman, Curty, and Haymes other than the allegations that are made against the board.

■ The plaintiffs' cause of action for an injunction against Haymes should also be dismissed. An injunction will be denied where the remedy sought is a "legal impossibility." (*See Divito v Farrell*, 50 AD3d 405, 406 [1st Dept 2008].) In this case, the offering plan places control of the cooling tower with the condo board and not with 261 West or with Haymes personally. Thus, there is no indication that it is within Haymes' power to comply with the injunction.

Accordingly, the orders of the Supreme Court, New York County (Paul G. Feinman, J.), entered June 15, 2010, which, to the extent appealed from as limited by the briefs, denied defendant 261 West LLC's motion for summary judgment dismissing the fraud and misrepresentation, trespass and nuisance claims as against it and defendants Evan A. Haymes, Matthew Bronfman and Edward Curty's motion for summary judgment dismissing the fraud and misrepresentation, trespass, nuisance and breach of fiduciary duty claims as against them and the

claim for injunctive relief as against Haymes, should be modified, on the law, to grant 261 West's motion dismissing the claim for fraud and misrepresentation, and to grant the individual defendants' motion in its entirety, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in the individual defendants' favor dismissing the complaint as against them.

Tom, J.P., Saxe, Moskowitz and Manzanet-Daniels, JJ., concur.

Orders, Supreme Court, New York County, entered June 15, 2010, modified, on the law, to grant 261 West LLC's motion dismissing the claim for fraud and misrepresentation, and to grant the individual defendants' motion in its entirety, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in the individual defendants' favor dismissing the complaint as against them.