Order, Supreme Court, New York County (Eileen Bransten, J.), entered April 11, 2012, as amended by order, same court and Justice, entered April 26, 2012, which, to the extent appealed from as limited by the briefs, granted so much of defendants’ motion as sought dismissal of the first, third and fourth causes of action against defendants 184 Thompson Acquisition LLC, 184 Thompson Street Partners, LLC, and Raymond Chalme (the Non-Sponsors), and dismissal of the third cause of action as against remaining defendant 184 Thompson Street Owner LLC (the Sponsor), denied so much of plaintiffs cross motion as sought partial summary judgment on subsections (a) and (b) of its first cause of action, and its third and fourth causes of action, and, upon searching the record, granted the Sponsor summary judgment on subsection (b) of the first cause of action to the extent of declaring that, having elected to establish the reserve fund for the subject condominium pursuant to the Administrative Code of the City of New York § 26-703 (b) (i), the Sponsor “was entitled to ‘receive [a] credit against the mandatory initial contribution to the reserve fund’ ” under section 26-703 (c), unanimously affirmed, without costs.
The Sponsor opted to fund the subject condominium’s reserve fund pursuant to Administrative Code § 26-703 (b) (i) (the Total Price Method). Under the plain language of the governing statutes, the “total price” referred to in section 26-703 (b) (i) is *543 not “the price in effect during the exclusive purchase period, i.e., the so-called ‘insider’s price,’ ” but rather the “ ‘last price . . . offered to tenants in occupancy prior to the effective date of the plan’ ” (Turtle Bay Towers Corp. v Welco Assoc., 228 AD2d 189, 189-190 [1st Dept 1996], lv denied 89 NY2d 804 [1996], quoting Administrative Code § 26-702 [b] [1]). We agree with the motion court that the record contains no conclusive evidence that the tenant-offeree prices set forth in the offering plan were increased prior to the plan’s effective date. We reject plaintiffs contention that the tenant-offeree prices set forth in the plan were “illusory.” Although 96 of the 140 units listed were vacant, disregarding the vacant apartments would only result in lowering the amount of the reserve fund, which would be illogical and run counter to the statutory Total Price Method’s purpose of providing for an adequate building reserve fund.
We also reject plaintiffs argument that a sponsor may take a credit for capital replacement work only when it has opted to use the second reserve funding method (the Roll-Over Method) listed in Administrative Code § 26-703, which provides for ongoing contributions to the reserve fund of 3% of actual sales over the course of up to five years (see § 26-703 [b] [ii]). Plaintiff argues that the use of the term “initial” in section 26-703 (c) indicates that further reserve fund contributions are required, which in turn would refer to the Roll-Over Method, and not the Total Price Method (see § 26-703 [c] [“An offeror may claim and receive credit against the mandatory initial contribution to the reserve fund for the actual cost of capital replacements” (emphasis added)]). Plaintiff’s argument reads far too much into the statute’s use of the term “initial.” The statute’s opening sentence refers to the “contributions required” pursuant to the section. The use of the plural indicates a legislative intent to encompass both of the reserve funding methods provided for in section 26-703 (b). In this regard, the use of the term “initial” would call for the credit to be applied solely against the “initial” contribution required under whichever of the two methods was being used. Similarly, section 26-703 (c) ends by capping the amount of the capital replacement credit at the lesser of the actual cost of the capital replacement work or “one per cent of the total price” (id.). This reference to “total price” further supports our conclusion that the capital replacement credit is intended to apply to either reserve funding method, since “total price” is an element in the calculation of both methods (see § 26-703 [b]). We add that construing section 26-703 (c) as providing for a capital replacement credit only under the RollOver Funding Method would run counter to the statutory intent *544 of encouraging sponsors to perform needed capital replacement work in conjunction with condominium conversions.
The motion court correctly determined that the Non-Sponsors may not be held individually liable for any of plaintiffs claims premised solely on alleged violations of the offering plan and certification (see Berenger v 261 W. LLC, 93 AD3d 175, 184 [1st Dept 2012]). The statements made by defendants in the certification and the plan were mandated by the Martin Act (see Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership, 12 NY3d 236, 246 [2009]), and plaintiff does not posit any basis of liability outside of that statute, nor assert that the Non-Sponsors are liable under an alter-ego or other veil-piercing theory.
We have considered plaintiffs remaining contentions and find them unavailing. Concur—Tom, J.E, Andrias, Renwick and DeGrasse, JJ.