[911 NYS2d 299]

PROMETHEUS REALTY CORP. et al., Appellants, v CITY OF NEW YORK, Respondent. ASSOCIATION FOR NEIGHBORHOOD AND HOUSING DEVELOPMENT (ANHD) et al., Intervenors-Respondents.

First Department, November 16, 2010

**APPEARANCES OF COUNSEL**

*Davidoff Malito & Hutcher LLP*, New York City (*Charles Capetanakis, Howard Weiss, Joshua Krakowsky* and *Dimitra Tzortzatos* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Karen M. Griffin* and *Francis F. Caputo* of counsel), for municipal respondents.

*John C. Gray, South Brooklyn Legal Services, Inc.*, Brooklyn (*Edward Josephson* and *Michael Grinthal* of counsel), for intervenors-respondents.

**OPINION OF THE COURT**

Saxe, J.

This appeal considers plaintiffs' challenge to the enactment by the New York City Council of the New York City Tenant Protection Act, Local Law No. 7 (2008) of the City of New York (Local Law 7), the aim of which is to provide legal remedies for tenants experiencing harassment by landlords attempting to force them out. Plaintiffs Prometheus Realty Corp., Reshit Gjinovic, Asia Gjinovic and 68-60 108th Realty, LLC are owners of various residential buildings in New York City. Plaintiff Rent Stabilization Association of NYC, Inc. is a not-for-profit organization representing the interests of approximately 25,000 landlords who own or manage apartment buildings in the city. Plaintiffs seek a judgment declaring that Local Law 7 violates both the New York State and United States Constitutions and enjoining the City from enforcing the law.

In addition to the opposition to the challenge submitted by the City, the court received opposition from two intervenors: intervenor-defendant the Association for Neighborhood and Housing Development (ANHD), a membership group of more than 90 community organizing and housing development groups, and intervenor-defendant Teresa Perez, the president of

Queens Vantage Tenants Council, an organization of tenants in more than 50 buildings bought and owned by Vantage Properties, LLC.

All parties moved for summary judgment, and the motion court granted the City's and the intervenors-defendants' motions for summary judgment dismissing the complaint (2009 NY Slip Op 31742[U]). On appeal, plaintiffs argue that Local Law 7 improperly grants a type of authority to the Housing Part of New York City Civil Court that may only be granted by the State Legislature.

The law, which became effective on March 13, 2008, amended portions of New York City Administrative Code, title 27, chapter 2, which contains the Housing Maintenance Code, to provide new and greater protection for tenants experiencing harassment by landlords attempting to force them to abandon their apartments (Council of City of NY Press Release No. 098-2007 [Oct. 17, 2007]).

Administrative Code § 27-2005, "Duties of owner," was amended to provide that "[t]he owner of a dwelling shall not harass any tenants or persons lawfully entitled to occupancy of such dwelling" (subd [d]). Section 27-2004 was amended to define the term harassment as "any act or omission by or on behalf of an owner that . . . causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy," and includes a long list of possible acts and omissions, such as the use of force, interruptions of essential services, baseless court proceedings, and removing the door or the tenant's possessions (subd [a] [48]). Section 27-2115 was amended to add a private right of action based on a claim of harassment (subd [h]).

Plaintiffs' challenge is based on the contention that the powers afforded by the New York State Constitution permit only the State Legislature to modify the jurisdiction of the Housing Part of the New York City Civil Court, and that, by enacting Local Law 7, the City Council has usurped that authority. This argument assumes that Local Law 7 expands the jurisdiction of the Housing Part. We reject that assumption.

The Housing Part was created by the Legislature in 1972 with the enactment of New York City Civil Court Act § 110. Its purpose is to hear "actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of *housing standards*, including, but not limited

to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the city of New York" (CCA 110 [a] [emphasis added]). Plaintiffs' position is that the phrase "housing standards" must be read narrowly, to include physical, objective, and readily ascertainable standards related to the physical plant and operation of buildings, but not "subjective" conditions and circumstances such as the question of whether harassment has occurred.

However, as this Court has previously observed, CCA 110 "grants the Civil Court broad powers in landlord-tenant proceedings" (*Missionary Sisters of Sacred Heart v Meer*, 131 AD2d 393, 396 [1987]). By authorizing the Housing Part to enforce local as well as state laws, *"including, but not limited to*, the multiple dwelling law and the housing maintenance code, building code and health code" (CCA 110 [a] [emphasis added]), the Legislature was granting broad authority in regard to the enforcement of "housing standards."

Although the Civil Court Act does not include a definition of the term "housing standards," in our view, the creation of remedies for harassment of tenants by landlords is a matter that falls squarely within the concept of "housing standards" as the term has been understood and applied since the Act was enacted.

First, review of the language of the statute itself to determine the Legislature's intent (McKinney's Cons Laws of NY, Book 1, Statutes § 97) establishes that CCA 110 contemplates more than simply standards for the physical plant or condition of buildings. For example, section 110 (a) (2) specifically authorizes the Housing Part to hear actions involving "the elimination or correction of a nuisance." This authority has regularly been invoked to consider subjective claims of nuisance unconnected to the physical condition of the building, such as those concerning excessive noise and noxious odors (*see e.g. Goodhue Residential Co. v Lazansky*, 1 Misc 3d 907[A], 2003 NY Slip Op 51559[U] [2003]; *Smalkowski v Vernon*, 2001 NY Slip Op 40071[U] [2001]).

Moreover, in other statutes the Legislature has already empowered the Housing Part to hear matters beyond the physical conditions of buildings and objective facts, reflecting its view that "housing standards" is broad enough to cover less tangible living conditions. For example, the Housing Part is authorized under Real Property Law § 235-b (1) to determine whether tenants are being "subjected to any conditions endangering or

detrimental to their life, health or safety" (*Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316, 325 [1979], *cert denied* 444 US 992 [1979]). This has also been relied on in cases involving intangible and subjective considerations such as noise levels emanating from an apartment (*see e.g. Matter of Nostrand Gardens Co-Op v Howard*, 221 AD2d 637 [1995]). The Housing Part is authorized under RPAPL 711 to determine whether a tenant is objectionable so as to entitle the landlord to terminate the lease and eject the tenant—also a matter requiring the court to determine issues involving neither the physical plant nor objective facts. That the court's jurisdiction to render determinations under RPAPL 711 requires a lease provision permitting termination of the tenancy in the event of objectionable conduct (*Dass-Gonzalez v Peterson*, 258 AD2d 298 [1999]) does not negate the fact that the Legislature explicitly authorized the Housing Part to determine the essentially subjective question of whether particular tenant conduct is "objectionable."

Since such issues as whether a tenant's conduct is objectionable or constitutes a nuisance have already been established to be within the jurisdiction of the Housing Part, and therefore necessarily an issue of "housing standards," the equivalent issue of whether a particular landlord's conduct constitutes harassment must similarly be recognized as an issue of "housing standards" within the previously-established jurisdiction of the Housing Part.

We observe that the Housing Part's authority to adjudicate the specific issue of harassment was in place even before Local Law 7 was enacted; in particular, Rent Stabilization Code (9 NYCRR) § 2524.3 (b) authorized landlords to commence eviction proceedings when a rent-stabilized tenant engaged in wrongful conduct, "the primary purpose of which is intended to harass the owner or other tenants . . . by interfering substantially with their comfort or safety." The Division of Housing and Community Renewal (DHCR) promulgated this provision in 1987 under the authority granted it by the Legislature (Omnibus Housing Act, L 1983, ch 403, § 9; L 1985, ch 888, § 2). Since then, there has been no suggestion that DHCR improperly imparted to the Housing Part greater authority than the Civil Court Act grants it.

We conclude then that Local Law 7 does not exceed the authority previously accorded to the Housing Part, but falls within the previously-defined jurisdiction of the Housing Part entitling it to enforce laws to establish and maintain housing standards.

■ Having concluded that Local Law 7 does not impermissibly expand the jurisdiction of the Housing Part to hear claims of harassment against landlords, we also reject the parallel argument that it impermissibly expands the Housing Part's equitable jurisdiction. CCA 110 (a) (4) authorizes the Housing Part to issue equitable relief such as restraining orders and injunctions in order to enforce "housing standards." This authority is no more limited to proceedings involving the physical condition of buildings than the remainder of the authority granted by section 110 (a) to hear actions in order to enforce housing standards. The cases plaintiffs cite for the unassailable proposition that certain types of relief are not available in the Housing Part or, indeed, in the Civil Court, are all distinguishable from this situation, in which the court has specifically been granted the authority to hear such matters and award such relief.

Plaintiffs also argue that the impropriety of Local Law 7 is demonstrated by its inconsistency with the remainder of the Housing Maintenance Code into which it was inserted. The purpose of the Housing Maintenance Code, they assert, is to provide for inspections of buildings, service upon building owners of notices of Code violations, and follow-up with enforcement mechanisms where those violations are not cured. The provisions of Local Law 7 incorporated in the Housing Maintenance Code, they contend, are the only portions of the Code *not* amenable to such handling by a housing inspector.

■ However, it is demonstrably untrue that the Housing Maintenance Code has been, until now, strictly limited to governing matters of building structure. Initially, as the motion court observed, the legislative declaration in the Housing Maintenance Code indicates an intent to protect tenants' actual *occupancy*, as well as the physical condition of the premises, in that it explicitly declares a need to protect tenants in areas of "health and safety, fire protection, light and ventilation, cleanliness, repair and maintenance, *and occupancy* in dwellings" (Administrative Code § 27-2002 [emphasis added]).

Moreover, even if the Housing Maintenance Code was initially limited to matters of building structure that could be discerned by inspectors and remedied by issuing violations, the Code has since been amended to add a provision concerning matters beyond buildings' physical structure. Indeed, Administrative Code § 27-2093, added by section 7 of Local Law No. 19 (1983) of the City of New York, specifically concerns tenant harassment, creating a procedure by which the Department of Housing Pres-

ervation and Development may consider whether the owner of a single room occupancy building is entitled to a certification of no harassment. Of course, this provision gives no authority to the Housing Part. We merely observe that the Housing Maintenance Code has not for some time been as limited as plaintiffs suggest.

■ We reject plaintiffs' assertion that in enacting Local Law 7, the City Council exceeded its authority "to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law" (Municipal Home Rule Law § 10 [1] [i]), since we perceive no inconsistency.

■ Finally, there is no merit to the contention that Local Law 7 violates plaintiffs' substantive and procedural due process rights. It is, in fact, rationally related to a legitimate State objective, namely, maintaining rent-regulated housing in New York City. Preventing landlords from forcing tenants out by such means as refusing to make repairs, so they can deregulate their buildings, is also rationally related to this goal (*see Daniels v Williams*, 474 US 327, 331 [1986]; *Natale v Town of Ridgefield*, 170 F3d 258, 262 [2d Cir 1999]). Moreover, Local Law 7 does not lack procedural safeguards for protecting landlords' due process rights (Administrative Code § 27-2115 [m] [2]; *see Matter of Daxor Corp. v State of N.Y. Dept. of Health*, 90 NY2d 89, 98 [1997], *cert denied* 523 US 1074 [1998]; *Matter of Cadman Plaza N. v New York City Dept. of Hous. Preserv. & Dev.*, 290 AD2d 344 [2002]).

Accordingly, the order of the Supreme Court, New York County (Eileen A. Rakower, J.), entered August 5, 2009, which denied plaintiffs' motion for summary judgment and granted defendants' cross motions dismissing the complaint, should be affirmed, without costs.

ANDRIAS, J.P., SWEENY, NARDELLI and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered August 5, 2009, affirmed, without costs.