■ TRIAX CAPITAL ADVISORS, LLC, Respondent, v MITCHELL RUTTER et al., Appellants. [921 NYS2d 54]—

Order, Supreme Court, New York County (Richard B. Lowe,

III, J.), entered on or about May 14, 2010, which, in an action for breach of contract, inter alia, denied defendants' motion to dismiss the complaint based on documentary evidence, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

On or about October 3, 2005, defendants, the owners of the premises located at 255 Fourth Avenue, Brooklyn, entered into a construction building loan agreement with nonparty Astoria Federal Savings and Loan Association (Astoria) for $14,950,000. Defendants planned to develop the premises, a 12-story apartment building, into a condominium containing 41 units. On or about May 1, 2008, defendants and Astoria modified the loan agreement, extending the maturity date until November 1, 2009. In addition to the loan, defendants maintained an unsecured line of credit with nonparty Amalgamated Bank in the sum of $5,000,000. As of December 31, 2008, defendants had drawn down the entire line of credit, owing Amalgamated $5,000.000.

On or about June 30, 2009, based on Amalgamated's recommendation, defendants entered into an advisory agreement with plaintiff, by which plaintiff agreed to provide financial and restructuring advisory services to defendants, assisting them with raising additional debt and/or equity capital to be used to complete the development and recapitalize the debt. The advisory agreement provided that for its services, plaintiff was to be paid 7.5% of the capital raised upon the closing of the financing. The advisory agreement was effective upon its execution and was to be terminated after 60 days from the execution date. Despite the scheduled expiration of the advisory agreement, the "compensation of services" section of the agreement provided that plaintiff could still receive payment for its services under certain circumstances for a six-month tail: "For a period of six months following termination of this Agreement, Triax shall be entitled to receive the Transaction Fee in the event the Company or its successors consummate a transaction with any party who Triax has introduced as set forth on Exhibit A (as amended) during the term of this Agreement. The agreement cannot be terminated, changed or any of its provisions waived except by written agreement signed by all parties." No amended "Exhibit A" was attached to the agreement. The "Exhibit A" attached to the agreement is strictly an indemnification and

hold harmless agreement,* which makes not a single reference to the term "parties who [plaintiff] has introduced."

On August 20, 2009, prior to the 60 days from the execution of the advisory agreement, defendants and plaintiff agreed to extend the advisory agreement for another 30 days. Prior to the extension, defendants had engaged in negotiations with Astoria and Amalgamated to refinance and restructure the debt and equity of the development project and premises. Finally, on or about November 3, 2009, defendants closed a deal with Astoria and Amalgamated, thereby obtaining an additional sum of capital of $9,094,509 for the project.

When defendants refused to pay plaintiff a fee from the additional capital funding raised from Astoria and Amalgamated, plaintiff commenced this action alleging defendants' breach of the advisory agreement. Plaintiff alleged, inter alia, that it had provided all the services required under the agreement and that, despite this, defendants failed to notify plaintiff of the closing and failed to pay the fee as set forth in the advisory agreement.

In lieu of an answer, defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). Defendants argued that documentary evidence, namely the advisory agreement, establishes that plaintiff was not entitled to a fee because it was not the party who introduced defendants to the additional source of funding. In opposition, plaintiff argued defendants were not entitled to a dismissal of the action because the contract was ambiguous as to when it was entitled to a fee at the tail period of the agreement, therefore requiring extrinsic evidence to clarify the ambiguity. Supreme Court denied defendants' motion, reasoning that summary judgment might be the more appropriate vehicle where the interpretation of the submitted documents was in dispute.

Whether a contract is ambiguous is a question of law for the court and is to be determined by looking "within the four corners of the document" (*Kass v Kass*, 91 NY2d 554, 566 [1998], citing *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162-163 [1990]). A contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning" (*Greenfield v Philles Records*, 98 NY2d 562, 570 [2002]; *see also Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]). Conversely, "[a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may

---

* The hold harmless and indemnification agreement requires defendants, in essence, to defend and indemnify plaintiff from any liability arising from the services plaintiff provided to defendants under the advisory agreement.

have two or more different meanings" (*Feldman v National Westminster Bank*, 303 AD2d 271, 271 [2003], *lv denied* 100 NY2d 505 [2003] [internal quotation marks and citation omitted]).

The existence of ambiguity is determined by examining the "entire contract and consider[ing] the relation of the parties and the circumstances under which it was executed," with the wording to be considered "in the light of the obligation as a whole and the intention of the parties as manifested thereby" (*Kass* at 566). The " 'intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties' reasonable expectations' " (*Del Vecchio v Cohen*, 288 AD2d 426, 427 [2001], quoting *Slamow v Del Col*, 174 AD2d 725, 726 [1991], *affd* 79 NY2d 1016 [1992]).

Applying these principles, we find that the term "with any party who [plaintiff] has introduced" as used in the advisory agreement to trigger a transaction feed at the tail period, clearly does not refer to either Astoria or Amalgamated. Indeed, plaintiff entered into the advisory agreement at the behest of Amalgamated, with whom it already had a line of credit for $5,000,000. Similarly, at the time of the execution of the advisory agreement, defendant also had a financial relationship with Astoria, in the form of a $14,950,000 loan, which was extended. Under the circumstances, it would be contrary to the plain meaning of the advisory agreement, as well as to the parties' reasonable expectations, to interpret the term "with any party who [plaintiff] has introduced," as applying to either Astoria or Amalgamated, rather than only to new sources of funding "who [plaintiff] has introduced" to defendants.

The linchpin of the dissent's reasoning for finding the contract ambiguous rests on the fact that the term in question, "any party who [plaintiff] has introduced," is accompanied by the phrase "as set forth in Exhibit A (as amended)" but no "Exhibit A (as amended)" was attached to the advisory agreement. Rather, as noted above, the "Exhibit A" attached to the agreement contains an indemnification and hold harmless agreement, which makes no reference, and therefore sheds no light, on the term "any party who [plaintiff] has introduced." Nor does plaintiff make any claim, in the complaint, or anywhere else, that Exhibit A was ever amended to address such term. Contrary to the dissenter's allegations, such omission does not leave the term " 'any party' undefined" since the term "any party" is unambiguously limited to those parties "who [plaintiff] has introduced." Extrinsic evidence such as the e-mails referred

to by the dissent may not be used to create an ambiguity in an otherwise clear agreement (*see e.g. W.W.W. Assoc. v Giancontieri*, 77 NY2d at 163). Concur—Catterson, Renwick and Richter, JJ.

Sweeny, J.P., and Moskowitz, J., dissent in a memorandum by Moskowitz, J., as follows: I dissent and would affirm because the agreement is ambiguous. The parties' financial and restructuring advisory services contract, dated June 26, 2009, expired 60 days after its signing, but plaintiff remained entitled to a fee for six months following termination of the agreement if defendants closed "with any party who [plaintiff] has introduced as set forth on Exhibit A (as amended) during the term of this Agreement." By defendants' own admission, there was no Exhibit A to the contract. This omission leaves the term "any party" undefined, rendering the above quoted language ambiguous and permitting consideration of extrinsic evidence to determine its meaning (*see Chimart Assoc. v Paul*, 66 NY2d 570, 572-573 [1986]; *see also 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002] [dismissal warranted under CPLR 3211 (a) (1) only if the documentary evidence conclusively establishes a defense to the asserted claim as a matter of law]).

Moreover, on August 20, 2009, the parties extended their agreement for an additional 30 days via e-mail. This e-mail extension was without any specific time frame for closing, but provided that plaintiff was to receive payment "on all amounts that Amalgamated lends to acquire the Astoria note." In addition, plaintiff was entitled to a commission on certain "forgiveness of principal indebtness" from Amalgamated.

Defendants assert that the parties intended plaintiff to receive a fee for introducing only new sources of financing and note that the transaction for which plaintiff seeks to recover a fee involved a lender that was not a new source. However, the word "new" does not appear in the contract and defendants submit no extrinsic evidence tending to show that "new" was part of the meaning of the words "any party."

The majority believes that the term "any party who [plaintiff] has introduced" cannot refer to Astoria or Amalgamated because defendant already had a financial relationship with these entities in connection with the same underlying construction project for which defendants were seeking additional financing. However, one should not ignore that the raison d'etre for this agreement was "to provide financial and restructuring advisory services . . . to assist with raising additional debt and or equity capital." Given that the agreement does not use the word "new," a party whom plaintiff introduces could mean a

party that plaintiff introduces to any additional financing arrangement, even if defendants had a prior financial relationship with that party. And, as discussed, the e-mail extending the agreement tends to show that the parties intended for plaintiff to receive payment for certain types of financing from Amalgamated (*see generally 511 W. 232nd Owners Corp.*, 98 NY2d at 152 [on a motion to dismiss, complaint's allegations and any submissions in opposition accepted as true and accorded benefit of every possible favorable inference]; *Whitebox Convertible Arbitrage Partners, L.P. v Fairfax Fin. Holdings, Ltd.*, 73 AD3d 448 [2010] [affirming denial of motion to dismiss because unclear language rendered agreement susceptible of two meanings]).