| |
|:---:|
| **Dahl v Prince Holdings 2012, LLC** |
| 2024 NY Slip Op 30486(U) |
| February 14, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 157743/2014 |
| Judge: James E. d'Auguste |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **Hon. James E. d'Auguste** _____    PART 55

*Justice*

---------------------------------------------------------------X

SHAWN DAHL and JAMES PETERSON,

                Plaintiffs,

           - against -

PRINCE HOLDINGS 2012, LLC, STEVEN CROMAN,
HARRIET CROMAN a/k/a HARRIET KAHAN CROMAN,
HARRIET KAHAN, ANTHONY FALCONITE, OREN
GOLDSTEIN, and JANETH DONOVAN,

                Defendants.

---------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157743/2014 |
| MOTION DATE | 07/31/2020 |
| MOTION SEQ. NO. | 18 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 018) 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 475, 476, 478

were read on this motion to/for         _____ SUMMARY JUDGMENT _____.

    Defendant Prince Holdings 2012, LLC ("Prince Holdings"), owns and operates 309 East 8th Street in Manhattan, the building in which plaintiffs Shawn Dahl ("Dahl") and James Peterson ("Peterson") live. In or around August 2014, plaintiffs commenced the instant action alleging that since Prince Holdings acquired the building, it, along with the individually named defendants, have engaged in a pattern of harassment, abuse, and neglect to drive plaintiffs from their rent-stabilized apartments.

    This case has a long history as the parties have engaged in voluminous motion practice, and while plaintiffs initially alleged eleven causes of action within their amended complaint, the decision and order rendered on Motion Sequence number three (MS003) disposed of the following causes of action: the first cause of action for a declaratory judgment insofar as asserted by Peterson was dismissed; the first cause of action for a declaratory judgment insofar as asserted by Dahl was dismissed as against all defendants, except for Prince Holdings; the second

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 1 of 22

[* 1]

cause of action for warranty of habitability, the third cause of action for constructive and actual eviction, and the fourth cause of action for actual eviction were dismissed as against all defendants, except for Prince Holdings; the fifth cause of action for trespass was dismissed as against all defendants except for Prince Holdings and Anthony Falconite ("Falconite"); the sixth cause of action for nuisance was dismissed as against Oren Goldstein ("Goldstein"); the eighth, ninth, and tenth causes of action were dismissed; and the eleventh cause of action for attorneys' fees was dismissed as against all defendants except for Prince Holdings (*see* NYSCEF doc. nos. 101, 355).

Defendants now move for summary judgment seeking dismissal on particular remaining causes of action within the amended complaint including the third cause of action for constructive and actual eviction as against Prince Holdings; the fourth cause of action for actual eviction as against Prince Holdings[1]; the fifth cause of action for trespass as against Prince Holdings and Falconite; the sixth cause of action for nuisance as against Prince Holdings, Steven Croman ("S. Croman"), Harriet Croman ("H. Croman"), Falconite and Janeth Donovan ("Donovan"); and the seventh cause of action for harassment against all named defendants.

## DISCUSSION

On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]). The movant must show prima facie entitlement to judgment as a matter of law by producing

---

[1] While defendants' notice of motion does not specifically seek relief pertaining to the dismissal of the fourth cause of action for actual eviction, defendants' moving papers expressly articulate a relevant argument for the relief sought. Further, plaintiffs responded to this argument in opposition, the irregularity in the notice of motion did not result in any prejudice to plaintiffs, and the notice contains a general prayer for relief. (*see Fifth & Fifty-Fifth Residence Club Assn., Inc. v Vistana Signature Experiences, Inc.*, 217 AD3d 564 [1st Dept 2023]). Therefore, it is within the Court's discretion to "grant relief, under a general prayer contained in the notice of motion..., other than that specifically asked for, to such extent as is warranted by the facts appearing on the papers on both sides" (*see HCE Assoc. v 3000 Watermill Lane Realty Corp.*, 173 AD2d 774, 774 [2d Dept 1991]).

**157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC**
**Motion No. 018**

Page 2 of 22

sufficient admissible evidence demonstrating the absence of any material factual issues (*see* CPLR 3212 [b]; *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of any opposition (*see Vega*, 18 NY3d at 503). The opposing party overcomes the movant's showing only by introducing "evidentiary proof in admissible form sufficient to require a trial of material questions" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

The Court, upon a summary judgment motion, may search the record and grant judgment to the non-moving party without necessity of notice or cross-motion (CPLR 3212(b); *see also Abramovitz v Paragon Sporting Goods Co.*, 202 AD2d 206 [1st Dept 1994]).

Third Cause of Action – Constructive/Actual Eviction

Plaintiffs' third cause of action for constructive and actual eviction alleges that defendants' illegal construction in the subject building created conditions within plaintiffs' apartments that not only caused plaintiffs to be constructively and/or actually evicted from portions of their demised premises, but also caused plaintiffs to incur hotel room costs as they were forced from their homes due to such conditions.

Prince Holdings seeks dismissal of the third cause of action for constructive and actual eviction arguing that there is no proof in the record that the plaintiffs were made to abandon their apartments or any parts of them, even if plaintiffs were discomforted by the various inconveniences of which they complain. Therefore, Prince Holdings contends that plaintiffs were never constructively or actually evicted from their apartments due to construction.

To be an eviction, constructive or actual, there must be a wrongful act by the landlord that deprives the tenant of the beneficial enjoyment or actual possession of the demised premises (*see Schwartz v Hotel Carlyle Owners Corp.*, 132 AD3d 541 [1st Dept 2015]). Actual eviction

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 3 of 22

occurs when the landlord removes the tenant from physical possession of the leased premises, while constructive eviction involves a landlord's wrongful acts which substantially and materially deprive the tenant of the beneficial use and enjoyment of the premises, although there has been no physical exclusion of the tenant (*see Barash v Pennsylvania Term. Real Estate Corp.*, 26 NY2d 77 [1970]). If the eviction is constructive, the tenant must show an abandonment of the premises and, therefore, cannot remain in possession of the demised premises (*Id.*). However, a constructive eviction may be partial, in which case the tenant must have abandoned only that portion of the affected premises (*see Minjak Co. v Randolph*, 140 AD2d 245 [1st Dept 1988]).

Here, Prince Holdings has failed to meet its prima facie burden of establishing a lack of dispute of material facts as to whether plaintiffs were made to abandon their apartments or any portion of them. As Peterson testified that he was forced to abandon a portion of his apartment, specifically, his son's room, for periods, as a result of the violations, leaks, and all the other conditions present in his apartment, and Dahl testified that she was forced to stay elsewhere for a few days after she returned to her apartment after being out of town for approximately a month-and-a-half, only to find her apartment uninhabitable and in a state of disrepair after a ceiling collapse and sewage leak, the Court finds that there are issues of fact to be determined at trial regarding exactly how and to what extent plaintiffs' beneficial enjoyment and/or actual possession of the demised premises may have been affected. Therefore, summary judgment to dismiss the third cause of action for constructive and actual eviction as against Prince Holdings is hereby denied.

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 4 of 22

Fourth Cause of Action – Actual Eviction (Damages/Injunction)

In the fourth cause of action for actual eviction, Dahl seeks monetary damages resulting from allegations that she was actually evicted from the basement foyer portion of her demised premises, when a Housing Preservation and Development ("HPD") Vacate Order was placed upon the premises, preventing her from accessing the space ancillary to her apartment for the duration of that vacate order. Dahl also alleges she is entitled to a mandatory injunction compelling Prince Holdings to construct an entrance in the public area of the basement foyer to access the boiler room without having to access that portion of the basement foyer Dahl has been granted usage of pursuant to her lease agreement.

Prince Holdings argues that this cause of action should be dismissed against Peterson as he failed to plead any facts supporting this cause of action within the amended complaint, nor is he seeking any relief regarding the same, and the record is devoid of any evidence in support of such a claim. Regarding the allegations made by Dahl that seek monetary damages (resulting from Dahl's lack of access to the basement foyer while an HPD vacate order was in place), Prince Holdings offers no argument in support of their position to dismiss that portion of the cause of action as to Dahl.

However, regarding that portion of the cause of action as to Dahl that seeks a mandatory injunction compelling Prince Holdings to construct an alternate entrance in the public area of the basement foyer, Prince Holdings argues that the amended complaint fails to sufficiently plead the elements for a permanent injunction, in that it fails to allege 1) that Prince Holdings violated any right of Dahl by not constructing a door, 2) that Dahl does not have a remedy at law, 3) that serious and irreparable injury will result, and 4) that the equities are balanced in Dahl's favor. Further, Prince Holdings argues that the lease cannot be interpreted to mandate the construction

157743/2014 DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 5 of 22

of a new door to access the boiler room, and instead grants a prescriptive easement to Prince Holdings as the landlord, through that section of the basement foyer of Dahl's leasehold.

As an initial matter, the fourth cause of action insofar as asserted by Peterson is hereby dismissed as Prince Holdings has established their prima facie showing that they are entitled to a judgment as a matter of law. Here, Peterson has failed to raise a triable issue of fact in opposition as to whether he was actually evicted, as the amended complaint is silent as to any allegations of actual eviction, nor was any testimony or other evidence provided within the record to contradict defendant's position. Therefore, the fourth cause of action insofar as asserted by Peterson is hereby dismissed.

The Court first addresses that portion of the fourth cause of action in which Dahl seeks monetary damages for that period she alleges she was prevented access to a portion of her leasehold due to an HPD vacate order being placed upon the premises.

It is well settled that a residential lease is deemed a sale of shelter and services by the landlord who impliedly warrants that the premises are fit for human habitation, the condition of the premises is in accord with the uses reasonably intended by the parties, and the tenants are not subjected to any conditions that are endangering or detrimental to their life, health or safety (*see* Real Property Law sec. 235-b (RPL)); *Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316 [1979]). The placement of an HPD vacate order on the premises is prima facie proof of a landlord's breach of the warranty of habitability, as violations of the New York City Housing Maintenance Code ("HMC") are prima facie proof that conditions exist (*see* Multiple Dwelling Law sec. 328(3)(b) (MDL)); *see also Fiondella v 345 W. 70th Tenants Corp.*, 217 AD3d 495 [1st Dept 2023]; *Allen v 219 24th St. LLC*, 67 Misc 3d 1212[A], 2020 NY Slip Op 50513[U] [Civ Ct, NY County 2020]).

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No.  018

Page 6 of 22

6 of 22

[* 6]

It is undisputed that an HPD vacate order was placed upon the premises, and this vacate order prevented Dahl from accessing a portion of the basement foyer that she is entitled to pursuant to the terms of her lease. As such, her ability to use, occupy, or enjoy that portion of her leasehold was obstructed for the time that the vacate order was in effect. Prince Holdings has the responsibility to maintain the premises under the warranty of habitability (*see* RPL sec. 235-b). As the record indicates that the vacate order created a rent-impairing breach of the warranty of habitability brought about by Prince Holdings' failure to meet its contractual obligation to maintain that portion of the demised premises, the Court finds that Prince Holdings breached its duty, and therefore owes Dahl restitution in the form of rent abatement.

As discussed above, Prince Holdings failed to offer an argument in support of that portion of its motion that seeks summary judgment dismissing the fourth cause of action as to Dahl's request for monetary damages premised on the HPD vacate order. Accordingly, as Prince Holdings has failed to establish its prima facie entitlement to judgment as a matter of law, its request for summary judgment on this portion of the fourth cause of action is denied. However, for the reasons stated above, the Court grants summary judgment in favor of Dahl as against Prince Holdings, only for that portion of the fourth cause of action that seeks damages for the period the HPD vacate order was in place. The amount of the abatement is to be determined at trial.

Next, Dahl seeks an injunction compelling Prince Holdings to construct an alternate entrance to the boiler room in the public basement area that would prevent the necessity of accessing the Dahl leasehold portion of the basement foyer space.

To state a cause of action for a permanent injunction, the complaint must allege the violation of a right presently occurring, or threatened and imminent, that the plaintiff has no

**157743/2014 DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC**
**Motion No. 018**

Page 7 of 22

[* 7]

adequate remedy at law, that serious and irreparable injury will result if the injunction is not granted, and that the equities are balanced in the plaintiff's favor (*see Canal Rubber Supply Co. Inc. v 6 Greene Realty Owner, LLC*, 202 AD3d 616, 617 [1st Dept 2022], *citing Elow v Svenningsen*, 58 AD3d 674, 675 [2d Dept 2009]).

Dahl testified that she entered a lease addendum in 2006 with Steven Kates, who was the landlord at the time. The language of this lease addendum in the relevant part reads as follows: "Rental on Apt. A Includes exclusive use of Basement space underneath entirety of Apt. A excluding Boiler Room but Including Foyer room into rear space which has exit to lot at 311 East 8 St. (currently a community garden)." Dahl testified that she understood this language to mean that she has exclusive use of this basement space except for that space in which the boiler is located (the boiler room). Dahl also stated in her testimony that the "area that the boiler is in is not possessed by me" and Dahl further acknowledged that going through her leased portion of the basement is the <u>only</u> way to access the boiler room.

A contract is unambiguous if on its face it is reasonably susceptible of only one meaning (*see Almah LLC v AIG Empl. Servs., Inc.*, 157 AD3d 416 [1st Dept 2018]). Further, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation of the language employed and the parties' reasonable expectations (*see Triax Capital Advisors, LLC v Rutter*, 83 AD3d 490 [1st Dept 2011] [internal citations omitted]). Written agreements that are clear, complete, and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties. Therefore, courts cannot make a new contract for the parties under the guise of interpreting the writing (*see MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd.*, 213 AD3d 28 [1st Dept 2022]). However, courts may as a matter of interpretation, carry out the intention of a contract by

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 8 of 22

transposing, rejecting, or supplying words to make the meaning of the contract clearer, in those limited instances to avoid an absurd result that would render a contract unenforceable in whole or in part (*see Jade Realty LLC v Citigroup Commercial Mtge. Trust 2005-EMG*, 20 NY3d 881 [2012]).

While the Court recognizes the terms of the addendum may not be the most elegantly drafted, there is no dispute in the record that the parties agree the addendum provides a carve-out exception for the landlord to access the boiler room. There is also no dispute within the record that Dahl has exclusive use of the basement space under apartment A. However, the Court does not read the addendum to mean that this exclusive use is to be provided to Dahl at the landlord's detriment and total exclusion from the boiler. Rather, the Court interprets this exclusivity to mean that Dahl shall be the only tenant with access to this basement space under apartment A for the duration of her tenancy. As the addendum is silent as to the procedure for how the landlord is to gain access to the boiler, it can only be assumed that the parties intended that the landlord would have unfettered access to an essential building system. If the parties had intended a different arrangement, it follows that they would have contracted further terms that were more particularly tailored to those expectations[2].

As the issue of contract reformation is not before the Court at this time, it is between the parties to determine how they will afford each other the necessary access to their contracted space within the premises as there is currently no formal prescribed method within the addendum. However, while injunctive relief is not appropriate at this juncture, the Court expects

---

[2] It is the position of the Court that its' interpretation of the term "exclusive" aligns with the 2012 DHCR decision relied upon by Dahl, as that decision simply determined that the initial contract terms reached between the parties shall control, and while no additional monies shall be due for Dahl's use of the "ancillary services" provided for in the addendum, there is also no determination made that landlord be restricted access to the boiler by virtue of the contract or otherwise.

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 9 of 22

9 of 22

that the parties shall refrain from hindering access to the space each is entitled to under their existing contract.

As the record establishes the amended complaint fails to adequately plead the necessary elements for an injunction requiring Prince Holdings to construct an alternate entrance to access the boiler room, the Court finds that Prince Holdings has established its prima facie showing that it is entitled to judgment as a matter of law on this issue. Dahl has failed to raise a triable issue of fact in opposition as the contract between the parties fails to state any such requirement. Therefore, summary judgment is granted in favor of Prince Holdings, and that portion of the fourth cause of action insofar as asserted by Dahl that seeks an injunction compelling Prince Holdings to construct an alternate entrance to the boiler room is hereby dismissed.

The Court therefore need not address defendants' other arguments regarding the matter of alternate access to the boiler room.

Fifth Cause of Action – Trespass

Plaintiffs' fifth cause of action for trespass alleges defendants physically entered their apartments without consent, and that dust and debris trespassed into their apartments during construction when materials, as well as the ceiling from units above, collapsed into their respective apartments. Plaintiffs allege this trespass was orchestrated by the contractor at the behest of the landlord interfered with the use and enjoyment of their personal property and seeks monetary damages. Peterson further seeks damages for medical bills he alleges he incurred because of his and his son's treatment for asthma because of toxic dust that invaded his apartment during this construction.

Prince Holdings argues that the fifth cause of action should be dismissed as against it as there is no evidence in the record that shows it engaged in any affirmative or willful acts

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No.  018

Page 10 of 22

10 of 22

sufficient to constitute a trespass regarding the construction at the premises. Defendants further argue that the fifth cause of action insofar as asserted by Peterson should be dismissed against Falconite as all of Peterson's claims relate to construction at the building and how the debris and dust disrupted his apartment and caused health issues for himself and his son. Defendants assert that those allegations have nothing to do with Falconite. Defendants further argue that as Peterson has only sued on his behalf, he is precluded from recovering monetary damages on behalf of his son, who is not a named party in this action.

Defendants also argue that the fifth cause of action insofar as asserted by Dahl should be dismissed against Falconite as he had a right to enter the basement space ancillary to Dahl's apartment, as he was operating as an agent of the landlord with permission to enter, and that space was not under Dahl's exclusive control.

A trespass is an intentional entry onto the property of another without justification or permission (*see Schwartz v Hotel Carlyle Owners Corp.*, 132 AD3d 541 [1st Dept 2015]). Trespass is also the invasion of a person's right to the exclusive possession of his premises (*see Berenger v 261 W. LLC*, 93 AD3d 175 [1st Dept 2012]). The trespass may occur by a defendant having caused the intrusion thereon by either a third person or an object (*see Kanayama v Kesy, LLC*, 219 AD3d 1222 [1st Dept 2023]), such as debris or water (*see Duane Reade v Reva Holding Corp.*, 30 AD3d 229, 237 [1st Dept 2006]). Trespass does not require an intent to produce the damaging consequences, merely intent to perform the act that produces the unlawful invasion (*see Berenger v 261 W. LLC*, 93 AD3d 175, 181 [1st Dept 2012]). To hold a defendant liable for trespass, the intrusion must be the immediate or inevitable consequence of what that defendant willfully did or did so negligently it would amount to willfulness (*see Phillips v Sun Oil Co.*, 307 NY 328, 331 [1954]; *Berenger v 261 W. LLC*, 93 AD3d 175, 181 [1st Dept 2012]).

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 11 of 22

[* 11]

11 of 22

The fifth cause of action insofar as asserted by Peterson is hereby dismissed as against Falconite. As there is no mention within the record or otherwise of any allegations about Falconite having participated in the construction or trespass on Peterson's property, defendants have established their prima facie showing that they are entitled to a judgment as a matter of law. Peterson has failed to raise a triable issue of fact in opposition, as his allegations and testimony focus on the recurring intrusion of construction debris, and not on whether Falconite participated in the trespass on his property or in the construction at the premises. Therefore, the fifth cause of action insofar as asserted by Peterson is hereby dismissed as against Falconite.

The Court also finds that Peterson is precluded from recovering monetary damages on behalf of his son, as his son is not a named party to this action.

The fifth cause of action insofar as asserted by Dahl is hereby dismissed as against Falconite. The record indicates that Falconite was acting on the landlord's authority and had the permission of the landlord to enter the basement space to access the boiler. As such, defendants have established their prima facie showing that they are entitled to a judgment as a matter of law. Dahl has failed to raise a triable issue of fact in opposition as to whether Falconite trespassed onto her property. As discussed above, the basement space that Dahl has ancillary use of pursuant to a lease addendum is not at the exclusion of the landlord and has only one entrance. This single entrance is currently the only entrance available for both the landlord to access the boiler, and for Dahl to access the basement space she is entitled to. Here, Dahl testified that after a disagreement about access, in which Falconite requested access to the boiler, Dahl allowed Falconite to enter the space accompanied by Janeth Donovan, the property manager of the landlord, and then Falconite proceeded to the boiler. However, as an agent of the landlord,

**157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC**
**Motion No. 018**

Page 12 of 22

Falconite did not require Dahl's permission to seek access to the boiler. Therefore, the fifth cause of action insofar as asserted by Dahl is hereby dismissed as against Falconite.

Here, Prince Holdings does not dispute that dust and debris from construction invaded plaintiffs' apartments, rather they assert that it was not their fault because they are purportedly not responsible for the actions of the construction company, and therefore could not have committed such a trespass. They further argue that it was its managing agent 9300 Realty, Inc. that hired Allan Yu's construction company and neither of those entities are named defendants in this instant action. Prince Holdings posits that because the alleged trespass stems from incidents where construction debris entered plaintiffs' apartments, due to alleged improper construction methods, those allegations cannot be maintained against Prince Holdings because there is no evidence in the record that Prince Holdings committed any affirmative act that caused the unlawful invasion of unwanted construction debris or materials. These arguments are unavailing.

Plaintiffs allege they made repeated complaints about conditions in their apartments concerning collapsing ceilings and other issues that led to repeated intrusions of water, construction material, and debris that were allegedly reported to management. "[A] landlord is responsible for and presumed to be capable of maintaining his premises in a reasonably secure and physically safe condition" (*Gibbs v Diamond*, 256 AD2d 266, 266 [1st Dept 1998] [internal quotation marks and citation omitted]), and "landlords have a common-law duty to take minimal precautions to protect tenants from foreseeable harm" (*id.* [internal quotation marks and citation omitted]). Therefore, Prince Holdings cannot divorce itself from either its own management company tasked with hiring the construction company, nor the construction company tasked with

157743/2014 DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 13 of 22

13 of 22

carrying out construction work at the premises and claim that because Prince Holdings did not participate in any affirmative acts of construction, that it did not participate in a trespass.

The intent element of trespass is satisfied where a defendant's alleged acts are such as "will to a substantial certainty result in the entry of foreign matter" into the plaintiff's property (*see Phillips v Sun Oil Co.*, 307 NY 328, 331 [1954][internal quotation marks and citation omitted]); *Kanayama v Kesy, LLC*, 219 AD3d 1222 [1st Dept 2023]), there remains an issue of fact to be determined at trial as to whether Prince Holdings caused water, construction material, and debris to enter plaintiffs' apartments, whether by their alleged inaction to address the recurring conditions or by their alleged affirmative action of instructing the construction company to inflict purposeful damage. As Prince Holdings has not met its prima facie burden of establishing that it is entitled to judgment as a matter of law, summary judgment is hereby denied against Prince Holdings on the fifth cause of action for trespass.

Sixth Cause of Action – Nuisance

Plaintiffs' sixth cause of action for nuisance alleges that defendants intentionally interfered with their right to use and enjoy their apartments by allowing toxic dust to permeate their apartments, noise from ongoing construction at the premises to keep them awake at night, as well as constant harassment regarding repeated unnecessary and non-emergency demands for access. Plaintiffs also allege that the ceiling collapses they experienced were orchestrated by the contractor, Allen Yu, at the direct behest of the landlord, Prince Holdings.

Prince Holdings, Steven and Harriet Croman, Falconite, and Donovan argue that they cannot be held liable for nuisance as they did not cause or create, intentionally or otherwise, the conditions complained of by plaintiffs, as those conditions were either pre-existing to Prince Holdings' ownership of the premises or created by the management company, 9300 Realty LLC

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 14 of 22

and the contractor Allen Yu, both of which are not named in the instant action. Defendants further argue that they cannot be held liable for the alleged wrongful acts of third parties. Specifically, Prince Holdings argues that it cannot be held liable for the acts of its management company 9300 Realty, LLC, or the contractor, Allan Yu, as there is no evidence in the record to support that Prince Holdings had any control over its management company or the contractor, as both were independent contractors, neither of which was named in this action.

"[A] claim of private nuisance arises from an interest in the use and enjoyment of property. The elements of a common-law claim for a private nuisance are: (1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act" (*Berenger v 261 W. LLC*, 93 AD3d 175, 182 [1st Dept 2012] [internal quotation marks and citations omitted]), and can be characterized by a "pattern of continuity or recurrence of objectionable conduct" (*LiNQ1, LLC v 170 E. End Condominium*, 221 AD3d 409, 409 [1st Dept 2023]). Claims of private nuisance may be based on allegations of dust, debris, noise, and vermin (*see Koretz v 363 E. 76th St. Corp.*, 178 AD3d 445 [1st Dept 2019]).

A party may be subject to liability for private nuisance arising out of its negligent or reckless misconduct (*see Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564 [1977]), therefore, nuisance need not be intentional to be actionable. Nor does a defendant have to directly cause or create the nuisance complained of, as a defendant may be held liable for the acts of a third party (*see Abrams v Board of Mgrs. of 25 Beekman Place Condominium*, 2019 NY Slip Op 30587[U] [Sup Ct, NY County 2019]). Therefore, defendants' argument that they cannot be held liable because they did not directly cause or create the nuisance is unavailing.

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 15 of 22

15 of 22

Defendants' assertion that they cannot be held responsible for conditions plaintiffs complain of that predate defendants' ownership of the building are also misplaced, as landlords are responsible for maintaining their premises in a "reasonably secure and physically safe condition" (*see Gibbs v Diamond*, 256 AD2d 266, 266 [1st Dept 1998][internal quotation marks and citation omitted]), and under the warranty of habitability (*see* RPL sec. 235-b), as allegations supporting a cause of action for violation of the warranty of habitability may also state a claim for private nuisance (*see Berg v Chelsea Hotel Owner, LLC*, 203 AD3d 484 [1st Dept 2022]). Defendants are responsible for construction work that occurs in their building, as "the owner of a multiple dwelling shall keep the premises in good repair" (*see* NYC Administrative Code 27-2005[a]).

Therefore, defendants' argument that they are not responsible for the actions of their management company and contractor simply because they were retained as independent contractors is unavailing. The Court is not aware of any distinction for independent contractors or third parties within the HMC, nor have defendants provided any support for their position. Contrary to defendants' assertion, when a tenant has sufficiently alleged a recurrence of objectionable conduct, a landlord may be held liable for nuisance for the acts of their contractor when the contractor's failure to perform in a workmanlike manner causes damage to that tenant's property (*see Duane Reade v Reva Holding Corp.*, 30 AD3d 229 [1st Dept 2006]).

Here, defendants have failed to meet their prima facie burden of establishing a lack of dispute of material facts as to whether Prince Holdings, Steven and Harriet Croman, Falconite, and Donovan interfered with plaintiffs' right to use and enjoy their apartments. Defendants do not dispute the conditions complained of by plaintiffs but merely argue that they did not cause or create the conditions and therefore cannot be held responsible. As discussed above, the Court

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 16 of 22

not only finds these arguments unavailing, but also finds that plaintiffs have sufficiently alleged that they had repeatedly complained to management about the conditions in their apartments to little or no avail. As such, summary judgment is hereby denied, as there remains an issue of fact to be determined at trial as to whether the defendants interfered with plaintiffs' right to use and enjoy their apartments, thereby creating a nuisance.

Seventh Cause of Action – Harassment

Plaintiffs' seventh cause of action for harassment alleges that defendants engaged in a pattern of behavior in violation of New York City Administrative Code § 27-2005(d) to induce plaintiffs to give up and waive their rights to their rent-stabilized apartments, which included repeated interruptions in essential services such as electric, water and heat, ignored and exacerbated deteriorating building conditions, catastrophic ceiling collapses and vermin infestations, threatened plaintiffs and utilized aggressive tactics to force buyouts.

Defendants argue that there is no support within the record for plaintiffs' claims of harassment, therefore these claims are without merit. Defendants further argue that the individual defendants as members of Prince Holdings 2012, LLC, or 9300 Realty, LLC, are personally exempt from the obligations of the LLC, and that an attempt to pierce the corporate veil is both inappropriate and insufficient. Specifically, defendants assert that the record does not support that the individual defendants, Steve and Harriet Croman, Falconite, Goldstein, and Donovan were operating as de facto owners of the landlord's corporate entity, Prince Holdings, LLC, and therefore they cannot be found liable for harassment. Additionally, defendants argue that as this case was filed before an amendment of the harassment statute that established a prescriptive manner in which buyout offers may be made to a tenant, the defendants cannot be held liable for harassment in the context of allegations of aggressive buyout offers.

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 17 of 22

The New York City Administrative Code § 27-2005[d] forbids the owner of a dwelling from harassing "any tenants or persons lawfully entitled to occupancy of such dwelling" as per sec. 27-2004[a][48]. The enactment of this legislation "created a new cause of action . . . to address a perceived effort by landlords to empty rent-regulated apartments by harassing tenants into giving up their occupancy rights" (*Aguaiza v Vantage Props., LLC*, 69 AD3d 422, 423 [1st Dept 2010]. Harassment is defined as: "any act or omission by or on behalf of an owner that causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy" (*see* NYC Admin. Code 27-2004[a][48], and "includes a long list of possible acts and omissions, such as the use of force, interruptions of essential services, baseless court proceedings, and removing the door or the tenant's possessions" (*Prometheus Realty Corp. v City of New York*, 80 AD3d 206, 209 [1st Dept 2010]). Additionally, sec. 27-2115 was amended to add a private right of action based on a claim of harassment (*see* NYC Admin Code 27-2115[h]; *Id.*).

Individual defendants may be found personally liable for a harassment claim as employees or corporate officers if they are found to be "de facto owners of the corporate landlord entities or participated in tortious conduct" (*Aguaiza v Vantage Props., LLC*, 69 AD3d 422, 424 [1st Dept 2010] [internal citations omitted]). Pursuant to NYC Admin Code sec. 27-2004[a][45], the term owner is broadly defined as "the owner...agent, or any other person, firm or corporation, directly or indirectly in control of a dwelling." Therefore, there is no need to pierce the corporate veil to hold individual defendants liable for harassment. As "personal liability may attach to a corporate officer who is construed to be an agent irrespective if the officer is or is not involved with the operation of the subject building" (*Schlam Stone & Dolan, LLP v Howard R.*

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 18 of 22

18 of 22

[* 18]

*Poch*, 40 Misc 3d 1213[A], 2013 NY Slip Op 51176[U] *5 [Sup Ct, NY County 2013]), a defendant needs only to fall within the enumerated categories of an 'owner'.

Here, defendants have failed to meet their prima facie burden of establishing a lack of dispute of material facts as to whether the individual defendants should be considered 'de facto' owners under the broad definition of an owner within the harassment statute. Defendants previously argued that Falconite was granted permission by Prince Holdings and Goldstein to act as an agent of the landlord as the "eyes and ears" at the building to investigate certain matters, such as unlawful tenancies, repairs, and to examine the property for damage. Further, the record indicates that Goldstein was able to assign the responsibilities for the upkeep and daily operations of the building through his role as the Chief Operating Officer of the building's management company, and Donovan averred and testified that she was the managing agent of the building for landlord, Prince Holdings.

Additionally, the record indicates that S. Croman was listed as the Head Officer, and H. Croman as the Officer and Managing Agent on the building's registration summary report, also known as the Multiple Dwelling Registration ("MDR"). The MDR is prima facie evidence of the person or entity in control of a subject dwelling (*see Department of Hous. Preserv. & Dev. of the City of N.Y. v Chana Realty Corp.*, 1993 NY Misc LEXIS 659 [Sup Ct, NY County June 7, 1993, No. 92-426]). Defendants argue adamantly that both S. Croman and H. Croman cannot be held personally liable for harassment because they were not in exclusive and complete control of the management and operation of the building, and therefore, cannot be considered de facto owners under the harassment statute. However, this is not the standard, and contrary to defendants' assertions, "the usual exoneration to a corporate officer or director for the obligations and responsibilities of the corporation does not apply to a multiple dwelling in light

157743/2014 DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 19 of 22

19 of 22

[* 19]

of the provisions of the Multiple Dwelling Law and Housing Maintenance Code" (*Housing & Dev. Admin. of City of N.Y. v Johan Realty Co.*, 93 Misc 2d 698, 701 [App Term, 1st Dept 1978]).

Moreover, defendants' submissions have inconsistencies. Defendants' prior argument against plaintiffs' cause of action for trespass asserted that Falconite was an agent of the landlord, and therefore, could not be held liable. However, in opposition to this cause of action, based upon the same information, defendants assert Falconite should not be considered an agent of the landlord as it pertains to the definition of an owner under the harassment statute. This is inconsistent. Similarly, defendants argue that while the record indicates H. Croman was an employee of 9300 Realty, LLC, and was also listed as the managing agent for the building, she held no responsibility in that capacity, and while S. Croman was listed as the Officer for the building, he was merely a member and principal of Prince Holdings. However, defendants offer no factual showing concerning the claimed lack of responsibility to the management or operation of the premises in support of these claims. Contrary to their position, H. Croman, Goldstein, and Donovan, as employees of 9300 Realty, LLC, admit that they exhibited direct control of the building, thereby satisfying the definition of an owner under the statute, when defendants' state in their moving papers that, "9300 Realty, LLC acts independently and wholly controls Prince Holdings 2012, LLC, and not the other way around."

Therefore, defendants have failed to establish that they are not directly or indirectly in control of the building. As such, summary judgment is denied, as there remains an issue of fact to be determined at trial as to whether the individual defendants are 'owners' under the broad definition contained within the harassment statute.

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 20 of 22

As summary judgment is denied, the Court does not address defendants' other arguments regarding buyout offers.

Defendants' Counterclaims / The Non-Payment Proceedings

Defendants seek summary judgment on their counterclaims[3] representing unpaid rents allegedly owed by the plaintiffs in the amounts of $34,638.55 and $91,384.00. While defendants argue these amounts are undisputed, the Court previously determined that material issues of fact remain to be determined at trial regarding plaintiffs' warranty of habitability allegations. "Should plaintiffs prevail on their claims in the instant action, defendants would be required to refund or offset any overcharge" (*see* NYSCEF doc. no. 480). Therefore, summary judgment on defendants' counterclaims is hereby denied.

## CONCLUSION

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment seeking dismissal of the third, fourth, fifth, sixth, and seventh causes of action of plaintiffs' amended complaint is granted in part and denied in part as follows:

1) Summary judgment dismissing the third cause of action for constructive/actual eviction is denied against Prince Holdings;

2) The fourth cause of action for actual eviction is dismissed insofar as asserted by Peterson;

---

[3] In or around February 2015, Prince Holdings as the landlord, commenced non-payment actions in Housing Court against each plaintiff individually (as tenants) (Index Nos. LT55216-2015 and LT55217-2015 the "summary proceedings"). In this Court's Decision and Order, dated May 12, 2015 (NYSCEF Doc. No. 101), and reiterated in the November 7, 2019, Decision and Order (NYSCEF Doc. No. 355), plaintiffs' cross-motion for consolidation was granted, consolidating the summary proceedings with the instant action, and upon consolidation, the summary proceedings were deemed to be treated as Prince Holdings counterclaims against plaintiffs in the instant action.

157743/2014   DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 21 of 22

3) Summary judgment is granted in favor of Dahl as against Prince Holdings on the fourth cause of action only for that portion that seeks monetary damages, the amount of such abatement to be determined at trial;

4) Summary judgment is granted in favor of Prince Holdings dismissing only that portion of the fourth cause of action, asserted by Dahl, that seeks an injunction compelling defendants to construct an alternate entrance to the boiler room in the basement foyer;

5) Summary judgment dismissing the fifth cause of action for trespass is granted in favor of Falconite and denied as against Prince Holdings; any damages that may be awarded shall be limited to the named plaintiffs;

6) Summary judgment dismissing the sixth cause of action for nuisance is denied against Prince Holdings, Steven Croman, Harriet Croman, Falconite, and Donovan;

7) Summary judgment dismissing the seventh cause of action for harassment is denied;

8) Summary judgment is denied on Prince Holdings's crossclaims; and it is further

ORDERED that the first and eleventh causes of action remain as against Prince Holdings. This constitutes the decision and order of this Court.

| 2/14/2024 | | | | James d'Auguste, J.S.C. |
|-----------|--|--|--|------------------------|
| DATE | | | | |

CHECK ONE: ☐ CASE DISPOSED ☒ NON-FINAL DISPOSITION

☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☒ OTHER

APPLICATION: ☐ SETTLE ORDER ☐ SUBMIT ORDER

CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

157743/2014  DAHL, SHAWN vs. PRINCE HOLDINGS 2012, LLC
Motion No. 018

Page 22 of 22

22 of 22

[* 22]